## Illinois Central R. R. Co. v. Peter J. O'Connor, by his Next Friend.

1. Railroads—*Duty Toward Trespassers.*—In the movement of its trains a railroad company is under no obligation of care and caution to a trespasser, and can not be charged with liability except in case of willful or wanton negligence.

2. Repeals—*By Implication.*—The repeal of a law or ordinance by implication is not favored.

3. Verdict—*Excessive Damages Not Always Evidence of Passion and Prejudice.*—A verdict for $15,000 for the loss of an arm and the necessary suffering by reason of such loss and deprivation of its use through life, is not so large as to be conclusive evidence that it is the result of passion and prejudice on the part of the jury.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. Elbridge Hanecy, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed July 5, 1900.

**Statement by the Court.**—On June 1, 1895, appellee was injured by one of appellant's freight trains, which resulted in the loss of his right arm. Suit was brought, a trial of which resulted in a judgment for defendant (the case being taken from the jury by the court), which on appeal to this court was reversed because of error in the exclusion of certain evidence. (77 Ill. App. 22.) We refer to that report for a statement of the facts, which appear to be the same in substance as in this record, with the exception of the additional matters that were shown upon the second trial, as follows.

An ordinance of the city of Chicago reads as follows :

"The bell of each locomotive engine shall be rung continually while running within said city, except locomotives running upon the railroad tracks situated east of Indiana avenue on the shore of Lake Michigan between Twenty-second street and Park Row in said city, when no bell shall be rung or whistle blown, except as signals of danger."

This ordinance was objected to by appellant's counsel for the reason, as it was claimed, that it had been repealed by a subsequent ordinance of said city, which reads as follows :

"Every engineer, fireman or employe of any person, firm, company or corporation owning or operating a railroad within the limits of the city of Chicago, in charge of any engine, shall be required to ring the bell of the engine at all streets and public crossings within the corporate limits of the city of Chicago."

As to the viaducts over the tracks at Twenty-second and Twenty-ninth streets, referred to in the statement on the former appeal as private ways, and being so marked, there is evidence in this record tending to show that the sign at Twenty-second street, indicating that the viaduct was a private way, referred to a narrow alley way extending north along the stone wall from Twenty-second street.

The evidence on behalf of the plaintiff also shows that at the time of the accident the weather was warm, that the night was dark, and that on warm summer evenings between the hours of seven and nine, large numbers of persons, both boys and men, were in the habit of resorting to the lake shore east of appellant's railway tracks, for some distance north as well as south of a point opposite and east of the foot of Twenty-fifth street, for the purpose of fishing, bathing and swimming in the lake; that some crossed on the viaducts, and that many crossed from the foot of Twenty-fifth street, using the steps which led up from the street to the top of the stone wall and the coupling pins on the east side of the wall as a means of crossing the wall, going to and coming from the lake. One witness states that some nights there would be as many as five hundred persons along the lake shore at this place and sometimes as many as one thousand. The plaintiff says that on the night in question there were as many as three or four hundred boys and men along the shore at this point, and there were about one hundred in swimming; that he thought most of the people crossed at Twenty-fifth street; that he and his companion crossed at that place and that he often saw people cross there; that his parents did not know that he was going to the lake swimming, and did not allow him to go there; that he knew it was dangerous to cross these tracks, and that he realized there was danger of being struck by a train while crossing

them. Bernie Engstrand, one of plaintiff's companions at the time of the accident, testified that he was in the habit of going to this place swimming; that there were about seventy-five in swimming there that night, mostly boys; that on the nights he was there, there were three or four hundred people along the lake shore, including men, women and children. Eight or nine other witnesses for plaintiff testified in corroboration of the foregoing witnesses as to the number of people who resorted to the lake shore at this point warm summer evenings; that many of them crossed the tracks from the foot of Twenty-fifth street, going over the stone wall, by way of the steps and coupling pins, but varying in their statements as to the number who crossed at Twenty-fifth street between the hours of seven and nine P. M., from twenty-five to three hundred or four hundred persons. One of the witnesses so testifying said : " You could always see somebody going back and forth. Probably between seven and nine in the evening there were three hundred. They were men, women and boys." Another witness, Singleton, who was fishing opposite the foot of Twenty-fifth street, testified that " people were continually coming and going, probably two hundred or three hundred people." Several witnesses also testified that at the team crossing at Twenty-seventh street there was a gate which was kept locked in the evening, and no one could pass or cross the tracks there during the evening.

There is a conflict in the evidence as to whether there was a light or lights or a switchman on the forward car of the train causing the accident, as it was being backed toward the north. The plaintiff and several of his witnesses testified that they did not see a light or any person on this car, but some of them, on cross-examination, testify to facts which, if true, made it very improbable, if not impossible, for them to have seen a light or switchman upon this car. The witness Hogan, for appellant, who said he was a switchman, testified that he was on this car, and that there were two red lights on the platform of the car, sitting on the end board, which was about eighteen inches wide; that they

were burning after the accident, and. that when the train was put away the lights were taken off.  On cross-examination, while the witness said he knew there were two lights, he admitted that on the former trial he might have said "the light," and that he testified on the former trial that "the light was sitting upon the platform outside the end gate."  On the former trial this witness testified before appellant's witness Tuhey, who said there were two red lights placed by him on the north end of the train about twenty minutes before the accident, and that he attached them to the hand-holds of the car on its extreme end, "at the side of the car, for the protection of switchmen.  I hooked the lights in these hand-holds."  This witness was not on the train at the time of the accident, but was on the ground closing switches when the train passed by him, backing toward the north before the accident.  He also said that after the accident and after the boy had been cared for, he saw two red lights on this car; also that as the train moved north past him he saw Hogan on the north car, but he admitted on cross-examination that on the former trial when asked whether any one was on the north car he said, "I couldn't say.  I didn't take particular notice."  The witness Nichols corroborated Tuhey to the effect that Tuhey got two red lights from the engine about an hour before the train started and walked down the side of the train; and says that it was the custom to keep these lights on the engine when not in use.

The train was moving at the time of the accident about six miles per hour.

The clear preponderance of the evidence is that the bell of the engine was not ringing at the time that the north end of the train passed the foot of Twenty-fifth street—the place of the accident.  The only evidence that the bell was rung was when the engine passed the team crossing at Twenty-seventh street, which was two blocks to the south of the place of the accident, and when the north car must have been several hundred feet south of the foot of Twenty-fifth street.

It further appears that the coupling pins in question had been in the wall for some two years prior to the accident, and had from time to time been removed by appellant's employes, but that they were replaced by fishermen and others when they had occasion to cross the wall at this point; but it does not appear that plaintiff knew of the pins being removed. The plaintiff testified that the pins and steps had been at this place about two years or over, and that he "never saw them taken down nor helped put them up." Two of appellant's witnesses, Hogan and Tuhey, testified that the night of the accident was clear, and that about June 1, 1895, they did not know of but few persons being in the habit of crossing the tracks at the foot of Twenty-fifth street, Hogan saying that possibly seven or eight would cross during an evening, and Tuhey that he had never seen very many people cross at this point, and that "probably five, six or seven crossed over that evening until the time of the accident." Nichols, the engineer, testified: "There were very few people around over there—mostly boys, a fisherman or two, that I have seen." Hogan said he "probably knew the use of these tracks at Twenty-fifth street better than anybody else." No other witnesses for appellant testified on this subject.

There is evidence on behalf of appellant that appellee ran into the side of the north car of this backing train, and was struck and knocked down by it, but we think the preponderance of the evidence shows that appellee was struck by the north end of this car while he was upon the track, in the act of crossing it, and that the whole train passed over him as he lay between the rails of the track. Plaintiff and four of his witnesses testify that the whole train passed over him.

At the close of the plaintiff's evidence, and also at the close of all the evidence, appellant's counsel requested the court to instruct a verdict for defendant, which was denied. The jury returned a verdict for plaintiff of $15,000, upon which, after a remittitur of $7,500, a judgment was rendered for $7,500, from which this appeal is taken.

W. A. Howett, attorney for appellant, J. G. Drennan, of counsel, contended that the plaintiff, in attempting to cross the defendant's tracks at a point not a public street, was a trespasser, and the fact that other persons were in the habit of crossing the tracks at this place in no wise changed the relation. I. C. R. R. Co. v. Godfrey, 71 Ill. 500; I. C. R. R. Co. v. Hetherington, 83 Ill. 510; Union Stock Yards Co. v. Karlik, 170 Ill. 409.

Where the verdict of the jury is the result of passion, prejudice, misconception or undue sympathy with appellee a remittitur does not cure the vice of the verdict. Nicholson & Sons v. O'Donald, 79 Ill. App. 195; Pens. Co. v. Greso, 79 Ill. App. 127; West Chicago St. Ry. Co. v. Krueger, 68 Ill. App. 450; West Chicago St. Ry. Co. v. Johnson, 69 Ill. App. 147; C. & E. R. R. Co. v. Binkopski, 72 Ill. App. 22.

Courts will take notice as a part of their general knowledge of the business affairs of life, of the manner in which railroad business is conducted and of the every-day practical operation of them. Smith v. Potter, 2 Am. & Eng. R. R. Cas. 141; C., C., C. & St. L. R. R. v. Jenkins, 174 Ill. 402; Slater v. Jewett, 5 Am. & Eng. R. R. Cas. 516.

James C. McShane, attorney for appellee.

The rule of law is well settled that when an Appellate Court has once passed on questions in a case its decision as to those questions remains the law of the case in all its subsequent stages, and *res adjudicata* binding not only on the trial court in any subsequent trial, but also on the Appellate Court itself on a subsequent appeal in the same case. Smyth v. Neff, 123 Ill. 310; Johnson v. Von Kuttler, 84 Ill. 315; West v. Douglas, 145 Ill. 164; Hook v. Richardson, 115 Ill. 431; Moshier v. Norton, 100 Ill. 63; Oldershaw v. Knoles, 6 Brad. 325; C. D. F. F. Co. v. Van Dam, 50 Ill. App. 470; Ry. Co. v. Hoyt, 44 Ill. App. 48; Village of Des Plaines v. Poyer, 22 Ill. App. 574; C. W. Co. v. Sargent, 40 Ill. App. 438; Ry. Co. v. Snyder, 27 Ill. App. 476; Allemania Ins. Co. v. Peck, 33 Ill. App. 548; Flower v. Brumbach, 30 Ill. App. 294; Ogle v. Turpin, 8 Brad. 453;

U. M. L. Ins. Co. v. Kirchoff, 51 Ill. App. 67; Mogk v. C.
C. Ry. Co., 80 Ill. App. 411.

MR. JUSTICE WINDES delivered the opinion of the court.

The plaintiff's declaration charges in substance that the
appellant was guilty of wanton, willful and reckless negli-
gence in backing its train of cars along its tracks, in viola-
tion of the city ordinance requiring it to keep a bright and
conspicuous light on the rear car of the train while it was
backing; also in violation of another ordinance requiring
the bell on the engine to be rung continually while running
within the city limits; also that appellant was guilty of
wanton and willful negligence generally in the management
and running of its train after dark along its tracks when
it was aware that children and adults were liable to be cross-
ing its tracks at the point in question.

The trial was had upon the assumption that plaintiff was
a trespasser upon appellant's railway tracks, and that there
could be no recovery except upon the theory that under the
circumstances shown appellant was guilty of willful or wan-
ton negligence. There are some claims by appellant's counsel
that the court erred in the admission of evidence and in not
awarding a new trial for the excessiveness of the verdict;
but the principal and controlling questions are, first, as to
whether there was error in submitting the cause to the jury,
and, second, whether, if it was properly submitted to the
jury, there is sufficient evidence of wanton or willful negli-
gence to support the verdict and judgment thereon.

On the former appeal we said, referring to the conflict in
the evidence as to the light on the car, the fact that there
were no pickets on the stone wall at the foot of Twenty-
fifth street, that there were pickets on this wall, both
north and south of this street, that there were steps lead-
ing up from the street, and the coupling pins on the
opposite side of the wall from the steps, and the offered
evidence that great crowds of people were constantly cross-
ing the tracks, and that thousands were constantly passing
up and down the lake shore immediately east of defendant's

tracks between the hours of seven and nine p. m., that there was a case for submission to the jury, in view of all these facts and circumstances and the offered evidence, "whether defendant was guilty of negligence, and if so, whether the acts constituting such negligence were liable to the construction of being in wanton and willful disregard of the rights and safety of the public generally, so as to amount in law to wanton and willful negligence."

While, as will be seen from the statement preceding this opinion, the evidence actually presented on the second trial does not show that the railroad tracks at the place in question were habitually crossed by so many persons, nor that so many persons were constantly passing up and down the lake shore immediately east of defendant's tracks as was offered to be shown, still we are of opinion that the evidence as produced tended to show that in fact large numbers of persons, estimated by the witnesses variously from twenty-five to three hundred or four hundred, were in the habit, on warm summer evenings, such as was the evening of the accident, of crossing the tracks at the foot of Twenty-fifth street by way of the steps and coupling pins, and that large numbers of persons, stated by the witnesses to be from three hundred to one thousand, were in the habit on such evenings of passing up and down on the lake shore immediately east of defendant's tracks, opposite and near the foot of Twenty-fifth street, and within a few blocks both north and south of that place, and that these facts were known to the servants of appellant who operated the train upon the evening in question—at least that they were known to the switchman, Hogan, who testified that he was upon the north car of the train in question. This evidence, for the reasons stated in our former opinion, and upon the authorities there cited, made a case proper for submission to the jury. Since our decision on the former appeal, we have had occasion, in the case of Jelinski v. The Belt Ry. Co., 86 Ill. App. 535, to consider the liability of a railway company to a trespasser upon its tracks, in which it was held (citing numerous cases) that the railway company was under no

obligation of care and caution in the movement of its trains to a trespasser, and could not be charged with liability except in case of willful or wanton negligence. In the case of R. R. Co. v. Murowski, 179 Ill. 77, also decided since the former appeal in this case, the plaintiff was injured while standing on the private property of the railroad company, having gone there with others for the purpose of procuring employment at a factory, the gate of which stood near the railroad tracks. It appeared that large numbers of men were in the habit of crossing the railroad tracks at this point, and that persons in search of employment were in the habit of congregating on the tracks and in front of the factory gate, and it appeared that the railroad company never made any objection to this use of its property. It was held that it was a question of fact for the jury to determine whether or not the plaintiff was a trespasser, and a judgment in his favor was affirmed, although the court instructed the jury, in substance, that if they believed the plaintiff was a trespasser, they should find for the defendant, unless they also believed from the evidence that the plaintiff was struck by reason of the wanton or willful negligence of the defendant's servants. The case at bar differs from the Murowski case in that we think the evidence shows plaintiff was a trespasser. In speaking on the question of negligence of the railroad company the court say:

" Whether the defendant was guilty of willful or wanton conduct or gross negligence, was purely a question of fact for the jury to determine from all the evidence introduced by the respective parties bearing upon that point in the case, and it was not the province of the court to inform the jury that some particular fact in the case was conclusive on that question."

The special act of negligence complained of was in starting the engine without ringing the bell or sounding the whistle, as required by statute, and in moving the engine in the city in violation of the same ordinance as to ringing the bell as in this case.

In view of these decisions, and after a full consideration of all the evidence, we think this case was properly submitted to jury.

As to the second question, whether the evidence is sufficient to sustain a finding that appellant was guilty of willful or wanton negligence, more difficulty is presented.

There is a conflict, as we have seen, as to whether there was a light or switchman upon the north car of the backing train at the time of the accident. The majority of the court, not including the writer, is of opinion that the preponderance of the evidence shows that there were both lights and a switchman on the car. This view is taken from the fact that the evidence on behalf of the plaintiff is of a negative character, and that several of the plaintiff's witnesses who testified that they did not see a light or switchman upon the car, showed by their cross-examination, as the majority of the court believe, that they were not in a position at the time of the accident to see a light or switchman upon the car, and further because the witness Hogan, for appellant, testified positively that he was upon the car and that there were two red lights upon the platform sitting on the end board, and that he was corroborated by the witness Tuhey, whose business it was to place these lights on the car, who testified that he did so place them a short time before the accident, and that they were, a short time after the accident, on the car and burning. It will be noted, however, that Hogan said the lights were sitting on the platform of the car on the end board, while Tuhey said they were attached to the hand-holds at the side of the car, and that he hooked the lights in these handholds. If the lights were hooked upon the hand-holds on the side of the car, then Hogan was wrong as to the position of the lights, and if these witnesses are correct that there were two lights on the car, whether on the end board as stated by Hogan, or hooked on the hand-holds, as stated by Tuhey, the light at the northeast corner of the car was in a position that it could have been seen by plaintiff and all of his witnesses who testified upon the subject, the plaintiff being between the tracks upon which the train that struck him was running, and his other witnesses being to the east, in an open space between cars which were

stationary both north and south of them, and very near to the moving train.   From a consideration of all the evidence upon the subject, the writer is of opinion that it justified the jury in finding there was neither light nor switchman upon this car.

As we have seen from the statement, the clear preponderance of the evidence is that the bell on the engine was not ringing at any time when the north car was near or passing the place of the accident, and therefore there was a clear violation by appellant of the city ordinance in this regard.   If, therefore, it be conceded that the preponderance of the evidence is that there was no violation of the ordinance with regard to the light, and that there was a switchman upon the north car, still the violation of the ordinance with regard to ringing the bell, taken in connection with all the other facts and circumstances shown by the evidence and set out in the statement preceding this opinion, and on the former appeal, presented a question peculiarly for the consideration of the jury as to whether the acts of appellant, under all these facts and circumstances, were wanton and willful.   The jury having answered this question in the affirmative, we are not prepared to hold that their verdict is so manifestly against the evidence that it is our duty to disturb it.   The case is a close one, and but for the decisions of the Supreme Court above referred to, which, as we construe them, required the submission of the case to the jury, we should be inclined to hold that there could be no recovery for the reason that the evidence all considered is insufficient to show wanton or willful negligence on the part of appellant.

It is said that the court erred in allowing the physical situation of appellant's tracks and the surroundings for 'a considerable distance south of the place of the accident, as well as north of that point, to be shown.   The immediate situation and surroundings were proper to be shown without question, and the distance from the scene of accident that it was material to show them, was a matter for the exercise of a sound discretion by the trial court.   This sit-

uation was shown to a distance of fourteen blocks south, as well as several blocks north of the place of the accident. We can not say the discretion of the court was abused, as it may be said that this evidence tended in some degree to explain the testimony of the witnesses as to the large number of persons who were in the habit of crossing appellant's tracks at Twenty-fifth street, because of the lack of means of access to the lake at other points, both north and south.

We think that the claim of the appellant that the court erred in admitting in evidence the ordinance as to the ringing of the engine bell within the city, because it was repealed by the subsequent ordinance shown by appellant, is not tenable. There is no express repeal by the subsequent ordinance, and repeals by implication are not favored. 23 Am. & Eng. Ency. of Law, 492; Holton v. Daly, 106 Ill. 139; Hyde Park v. Cemetery Assn., 119 Ill. 141–7; Trausch v. Cook Co., 147 Ill. 537; Ill. C. R. R. Co. v. Gilbert, 157 Ill. 354; Gibson v. Ackermann, 70 Ill. App. 399.

In the Gilbert case, *supra*, it was held that the same ordinance now in question was not repealed by the subsequent one. This fact appears from the abstract of the record in that case on file in this court, though not from the opinion of the Supreme Court.

Moreover, we think that the subsequent ordinance is not necessarily inconsistent with the prior one.

The claim that the verdict for $15,000 was manifestly unjust and the result of passion and prejudice on the part of the jury as against appellant, can not, in our opinion, be maintained. The amount of the verdict does not, in our opinion, indicate such passion and prejudice as to vitiate the entire verdict. There is no contention but that the proceedings at the trial were entirely fair and proper, and only the size of the verdict, it is contended, shows passion or prejudice. The plaintiff is entitled to full compensation for the loss of his arm, which was a question peculiarly for the consideration of the jury, and we will not undertake to say that a verdict for $15,000 for the loss of plaintiff's arm and his necessary suffering by reason thereof and his deprivation by reason of such loss through all his life, is so

large as to be the result of passion and prejudice by the jury. C. C. Ry. Co. v. Wilcox, 33 Ill. App. 450, affirmed in 138 Ill. 370; R. R. Co. v. Murowski, 179 Ill. 80; R. R. Co. v. Robinson, 58 Ill. App. 181; R. R. Co. v. Cleminger, 77 Ill. App. 186.

Being of opinion that there is no reversible error in the record, the judgment is affirmed.