JOHN SCHULTZ v. FARIBAULT CONSOLIDATED GAS & ELECTRIC COMPANY.[1]

December 21, 1900.

Nos. 12,420—(174).

**Personal Injury—Escape of Electricity.**

In an action to recover damages for personal injuries received from electricity caused by a defective system of insulation, *held*, that the evidence sustains the verdict.

**Newly-Discovered Evidence.**

Proofs of newly-discovered evidence examined, and *held* not sufficiently definite and certain to warrant the granting of a new trial.

**Verdict not Excessive.**

*Held*, that the verdict was not excessive.

Action in the district court for Rice county to recover $15,200 damages for personal injuries. The case was tried before Buckham, J., and a jury, which rendered a verdict in favor of plaintiff for $7,200. From an order denying a motion for judgment in favor of defendant notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Anson L. Keyes* and *Lafayette French*, for appellant.

*Batchelder & Batchelder*, for respondent.

LEWIS, J.[2]

Action to recover for personal injuries alleged to have been received from electric shocks produced by the negligent construc-

tion of defendant's electric light plant. Verdict for plaintiff, and defendant appeals from an order denying its motion for a new trial.

Defendant had erected a pole at the edge of the sidewalk and in front of the south line of the opera house on the east side of Main street in the city of Faribault. On the top of this pole was placed an electrical transformer, which received a current of one thousand forty volts, and transmitted the same into currents of less power, as required for lighting purposes. There were two clusters of wires, consisting of five each, passing down from the transformer, each cluster entering a gas pipe of about one inch in diameter, which pipes were about ten feet in length, and were attached to the side of the pole, and entered the ground at its base. These pipes were for the protection of the wires. From the base of the pole the pipes containing the wire were continued under the sidewalk into the basement of the opera house, and by this means the house was lighted. There were also two wires running from the transformer to the porch, through which the porch was lighted.

On the evening of October 25, 1899, plaintiff drove up close to the sidewalk in front of the opera house with a team of horses and a wagon loaded with flour. Stopping, the wagon stood directly in front of the opera-house door, and the team to the south opposite the south post of the porch, which post stood in the edge of the sidewalk next to the street gutter. Leaving the team unhitched, he went upstairs. Returning, he jumped up on the load by stepping on the hub of the rear wheel, took his position in front, sitting down, picked up the lines, and claims immediately to have received an electric shock which caused him to fall from the load to the sidewalk. Getting up, and noticing that his horses were down, he started to unhitch them, and, passing to their heads, took hold of the bridle bit, and received another shock, which it is claimed caused paralysis of his left arm.

In support of its motion for a new trial there are three propositions presented on this appeal by appellant: First, no proof of negligence on part of defendant, and that the verdict was not justified by the evidence; second, newly-discovered evidence ma-

terial for the defendant, which it could not, with reasonable diligence, have discovered and produced at the trial; third, excessive damages, given under the influence of passion and prejudice.

1. The specific act of negligence charged in the complaint is that the electric wires and attachments, which were intended to convey electricity from the pole to the opera house, were so defective and negligently constructed and arranged that the currents of electricity passed into and along the ground next to the sidewalk to such an extent that plaintiff became injured by coming into contact with the same. The defense is based upon the following propositions, which it is claimed were conclusively established at the trial: First, that the force used through the wires running down the post was only fifty-two volts, and that such force could not injure a human being; second, that the ground is always neutral and cannot be charged with electricity to such an extent as to injure anyone; third, that the electrical attachments and connections were, at the time of the accident, in proper condition, and no electricity could, in any event, have passed into the ground where plaintiff received the shocks.

It may be admitted that a human being may receive a current of electricity of fifty-two volts, and not be injured. It may also be admitted that, as a general thing, the earth is neutral, and that, if a live wire be deep enough to reach the permanent moisture, the electricity will be so dissipated and absorbed as to be harmless to a person standing near,—as in the case of a lightning rod. But, even with these concessions, does it conclusively appear that plaintiff was not injured as he claims? It was conclusively established that plaintiff and his team received electric shocks at the place and at the time stated. It was also shown that other horses on other occasions received similar shocks at the same place. It was shown that the electrified ground was confined to the space between the post and the porch along the gutter. There was evidence reasonably tending to prove that, as soon as the wires on the post were cut, the horses got up. So the question is, if it was not electricity which caused the plaintiff and the horses to fall, what was it? And, if it was electricity which caused the dis-

turbance, where did it come from? There was no evidence reasonably tending to show that it came from the wires of the other company, and there was evidence tending to show that it came from the wires of defendant company.

The fact of the electric shocks being established under the circumstances noted, it reasonably follows that those shocks were occasioned by defendant's system. The only alternative is that they were caused by something unknown. Does it appear from the record that the facts upon which the experts based their reasoning were conclusively established by the evidence? We think not. It was a question for the jury to determine whether the testimony as to the condition of the transformer, the insulation, and number of volts actually carried was true. In arriving at a result, the nature of the shock, the place, the cutting of the wires, the former defective condition, the credibility of the witnesses, the fairness, skill, and experience of the experts, and the absence of proof of any other cause, were all matters to be considered; and, if the result indicates that the jury must have considered the testimony of the experts as untrue or untrustworthy, there is nothing in the record to challenge such conclusion. In view of the evidence, it is not only possible, but probable, that, if fifty-two volts only passed down the post, and if that amount, charging the ground, could harm no one, then the transformer was out of order, and more than fifty-two volts reached the ground. If it is true that the insulation of the wires within the pipes was perfect, then the electricity escaped down the post some other way not explained. If the total amount of volts carried from the transformer was not sufficient to harm a person when within its circuit, and if there was no short-cut circuit from the post through the mud and water of the gutter to the opera-house porch, then the mud and water at that point had become heavily charged with the constantly escaping current of either low or high degree, and plaintiff was injured by coming into contact with it.

It is well known that a substance heavily charged with electricity will cause an electric shock when coming into contact with a person, even if such person be standing upon a non-conducting

substance, as dry wood. The shocks could not have occurred in this case if the earth had been neutral, and had absorbed the current from the post as rapidly as discharged. If the ground directly under the moist or wet surface were hard and dry, it would give more resistance, and the tendency would be for electricity to accumulate through those channels affording the least resistance,— in this case the moist surface. And, if such were the condition of the gutter, a shock could readily be received by either horse or man standing with one foot within the gutter and one foot upon dryer ground. If the plaintiff could not have received a shock while perfectly insulated upon the load of flour, then he was not perfectly insulated, but came in contact with the ground through the wagon, harness, and wet sacks and blanket upon which he sat; and the evidence indicates such to be the case.

From all the circumstances we must hold that the jury were justified in finding that the injury was sustained, and that defendant was the cause of it.

2. As to the alleged newly-discovered evidence, we do not consider it of sufficient importance to warrant a new trial. The statements of the parties who claim to have seen the plaintiff use his arm are not of that definite, precise character to present substantial proof that plaintiff was not in fact injured as he claimed and as the physicians testified.

3. The verdict was large, but not so excessive as to imply that it was rendered under the influence of passion or prejudice. The evidence tended to show that the arm was paralyzed from the shoulder to the tips of the fingers, and that such condition was permanent. If so, the result would be more serious than if part of the arm had been amputated and the part remaining could be used. Of course, there is the chance of recovery. But the whole matter was before the trial court and jury. We cannot accept the theory of hysterical paralysis presented by defendant's witnesses as the reasonable explanation in the face of the other testimony. The subject was fully gone into, and all the tests known to the experts were applied to determine the facts. While all such testimony is to some extent uncertain,—and, if the trial court and jury

were mistaken, time alone can tell,—we are bound by the conclusions reached.

Order affirmed.