OSCAR LAITINEN v. SHENANGO FURNACE COMPANY.[1]

January 3, 1908.

Nos. 15,430—(127).

**Vice Principal—Questions for Jury.**

    The plaintiff was injured, while working in the defendant's mine, by the use of unsafe fuse furnished to him by its shift boss. *Held,* upon the evidence and verdict herein, that the boss was acting as a vice principal for the defendant, and that whether the plaintiff assumed the risk and was guilty of contributory negligence were questions of fact under the evidence.

[1] Reported in 114 N. W. 264.

Action in the district court for St. Louis county to recover $2,000 for personal injuries. The case was tried before Dibell, J., and a jury which returned a verdict in favor of plaintiff for the amount demanded. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*E. C. Kennedy*, for appellant.

*John R. Heino* and *Theo. Hollister*, for respondent.

START, C. J.

The plaintiff, while in the employ of the defendant and working in its mine, was on July 11, 1906, injured by the explosion of a charge of dynamite. This is an action to recover damages for such injury, on the ground that his injury was caused by the defendant's negligence. The plaintiff recovered a verdict for $2,000, and the defendant appealed from an order of the district court of the county of St. Louis denying its motion for judgment notwithstanding the verdict or for a new trial.

Evidence was received on the trial, some of it conflicting, tending to establish these facts: The plaintiff was twenty two years old, and had been in this country about sixteen months at the time of the accident, and during the last four months thereof he worked for the defendant as an underground miner, during which time he and his partner used in their work dynamite, caps, and fuse. This was his first experience in the use of explosives. They worked on what was known as "contract work." The necessary explosives and fuse for the work were furnished and delivered to them by the defendant at its office, upon certain days, known as "supply days," upon the order of its shift boss. The price therefor was charged against their credit for work at the end of the month. No miner could get any explosives or fuse except on the order of the shift boss. The fuse kept and given out by the defendant from its office was standard, safe, and proper for use. If any of the miners used up their fuse between supply days and applied to the shift boss for more, he would, in case he did not have any in the supply box, tell the applicant to borrow it of some other miner who had a surplus. A week before the accident, the plaintiff and his partner were told by the shift boss to loan one hundred feet of their fuse to some other miners, and he

would return it to them. They complied, although they were not obliged to do so. In return therefor, the shift boss furnished and delivered to them fuse which, by reason of exposure or some other cause, was unfit and unsafe for use, and in so doing he acted in the line of his duty as a representative of the defendant. He was, however, guilty of negligence in furnishing such fuse to the plaintiff and his partner, which was the proximate cause of the plaintiff's injury. The plaintiff had never received any fuse before except from the office; and as to such fuse no claim is made that it was not safe. That received by the plaintiff and his partner from the boss, in return for that which they had loaned pursuant to his direction, was of light color and somewhat soft and sticky, which was observed by the plaintiff. On the night of his injury the plaintiff and his partner had drilled and loaded three holes in the breast of the drift on which they were working, two towards the top of the breast and one lower down. The fuse used in the two upper holes was received by them from the office. That used in the lower hole was received direct from the shift boss in return for that loaned. They succeeded in lighting the fuse in the upper holes, but that in the lower one did not seem to take fire. They then retired to a safe distance. The upper holes exploded, but the lower one did not, and, after waiting for a reasonable time, some ten minutes, they returned to the breast, believing that the lower fuse had not taken fire, and the plaintiff commenced to remove the refuse occasioned by the explosion in the upper holes, when the lower hole exploded, by reason of which the plaintiff lost his left eye, and was otherwise seriously injured. The delay in the explosion in the lower hole was due to the defective and unsafe character of the fuse.

The trial court charged the jury that: "If it was the duty of the shift boss to furnish the plaintiff with the fuse that had been lent, if that was a duty cast upon him by the defendant, and the way the defendant had of supplying the plaintiff with the fuse at the time, in place of that loaned, and in so doing the shift boss represented the defendant in the matter of furnishing fuse, and the shift boss was negligent in furnishing unfit fuse, then the defendant is liable for the negligence of the shift boss in furnishing such fuse." This was not excepted to by the defendant at any time.

It is the contention of the defendant that the shift boss was not acting for the defendant as a vice principal in delivering the defective fuse to the plaintiff, in return for that which he had directed to be loaned to other miners, but "simply as the go-between or representative of the miners themselves in both borrowing and loaning fuse." The jury, by their verdict for the plaintiff, necessarily found the fact to be otherwise.

It was the defendant's duty as master to furnish the plaintiff and other miners, working in the mine on contract, safe fuse to enable them to execute the work assigned to them. The evidence fairly justifies the inference that this duty was delegated to the shift boss. The fact that he gave the miners orders on the office for the fuse was a mere matter of detail, by which the boss got the fuse into the hands of the miners. He determined when the miners should be furnished with fuse, and they could not obtain a foot of fuse except on his order, and the evidence sustains the finding of the jury that in delivering the fuse to the plaintiff, in place of that loaned, the boss was discharging a duty cast upon him by the defendant. It follows, and we so hold, from the evidence and the verdict, that the boss, in furnishing the defective fuse to the plaintiff, was acting as a vice principal for the defendant, and that it is liable for the negligence of the boss.

It is further urged by the defendant that the plaintiff assumed the risk of using the defective fuse, and was also guilty of contributory negligence. While the plaintiff observed the unusual condition of the fuse, yet the evidence is far from conclusive that he knew and appreciated the dangers of using it. Why should he doubt its safety? It was furnished to him by the shift boss. Whether he either assumed the risk or was guilty of contributory negligence, or both, were questions of fact under the evidence.

Order affirmed.