MATT LARSON v. CHARLES F. HAGLIN.[1]

February 7, 1908.

Nos. 15,358—(75).

**Contributory Negligence.**

> Plaintiff refused to work in a shaft in which an elevator was in operation. Afterwards, when the elevator was standing still, in the basement, he was directed by his master, the defendant, to plaster part of the inside of the shaft on the second story. Defendant told him that the elevator was undergoing repairs, and expressly promised to let him know before it should be put in operation. When the plaintiff returned to the shaft, after he had done some other work, he put his head and shoulders in it to do the plastering. The elevator had passed above him. The jury found that defendant had negligently failed to notify him that it was in motion. The descending counterweight struck him, and inflicted the injuries here sued for. To the top of the elevator was attached a cluster of five steel ropes, each an inch in diameter; to its bottom a steel plunger, eight inches in diameter. On looking into the shaft, either the ropes or

[1] Reported in 114 N. W. 958.

103 M.—17

the plunger must have been seen. The light was strong. In view of the breach of the specific promise of the master to warn plaintiff, and of the resemblance between the ropes and the plunger, the action of the trial court in refusing to set aside the verdict and to hold that plaintiff was guilty of contributory negligence as a matter of law is sustained.

**Verdict not Excessive.**

Plaintiff's injuries consisted of a compound, comminuted fracture of the right arm, which necessitated subsequent amputation, and a scalp wound, which subsequently healed, and a wound on the shoulder. It is *held* that a verdict of $10,500 was not excessive.

Action in the district court for Hennepin county to recover $25,000 damages for personal injuries. The case was tried before John Day Smith, J., and a jury which returned a verdict in favor of plaintiff for $10,500. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

Plaintiff and respondent was a plasterer in the employ of defendant and appellant, who was constructing the building hereinafter referred to under contract with the owner. Plaintiff was injured while engaged in plastering a part of the inside of one of a number of elevator shafts, which was reached through a window in that shaft. The shaft was about "seven feet across." The elevators, operated by hydraulic pressure, were forced upward by means of a large steel tube, called a "plunger," which was attached to the bottom of the elevator car, and which ran into the earth to a depth equal to the height of the building. When the elevator would go up, the plunger would go up with it; when the elevator came down, the plunger would descend into its receptacle in the earth. The elevator car was suspended by means of wire cables running over pulleys and attached to the top of the elevator car.

Plaintiff, aware of the danger of working in the shaft while the elevators were in operation, refused to plaster in one shaft because he had seen the elevators there in use on the morning of the day on which he was hurt. On the afternoon of that day a servant of defendant, whom the jury found to have been a vice principal, directed .

plaintiff to work in that shaft. Its elevator was then standing still in the basement. The vice principal then told the plaintiff that the elevator was being fixed—having its piston repacked—and promised plaintiff that he would go down to the basement, and, when the workmen there had finished fixing the elevator and it was ready to start, he would go up and so tell the plaintiff. The vice principal left. Plaintiff did some other work, returned to the shaft, went into another room to prepare mortar, and returned in about fifteen minutes to complete his job. Meanwhile the elevator had been put in operation, had made several trips, and immediately had gone above the second floor, where the plaintiff was about to work. Plaintiff put his head and arms into the shaft to do the plastering. Some of his testimony tends to show that he confused the cluster of wire ropes with the plunger. "Well, I looked on it just in a hurry, because I did not have much time" "until the elevator might be running again; and when I looked I thought it was just the same." "I looked, but I did not see the shaft." "I just ran my eyes over it. That is all, because I was in a hurry. I was sure the elevator was down in the basement, because he [the vice principal] told me that." According to the plaintiff's contention the vice principal had not notified him as he had promised; according to the vice principal's testimony, he had so notified plaintiff. For present purposes it must be assumed that no such notification or warning was given by the foreman, a helper, or other person. Similarly it must be here assumed that plaintiff did not in fact know that the elevator had gone up. As the elevator ascended, the counterweights came down in front of the window at which plaintiff was at work and inflicted the injuries to his head and arm here sued for. The jury returned a verdict for plaintiff for $10,500. From the order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, this appeal was taken.

*Hale & Montgomery,* for appellant.

*Larrabee & Davies,* for respondent.


JAGGARD, J. (after stating the facts as above).

1. Defendant's first contention is this: The plunger in motion was in plain sight, about three feet away from the place at which plaintiff

was working. The light was strong. Plaintiff himself testified that he looked into the shaft. Knowing the danger, he failed to be governed by the knowledge which the simplest exercise of his sense of sight would have given him. He must have known, from the presence of the plunger, that the elevator had passed beyond the place at which he was working and gone above him. As a matter of law, therefore, he assumed the risk and was guilty of contributory negligence.

The question is a particularly close one, and we are not without grave doubt. For the purposes of this appeal, however, it appears that the defendant had broken his express promise to the plaintiff that he would advise plaintiff when the elevator was ready to be started. Plaintiff, fully aware of the danger, had a right to rely on that promise. The elementary principle that an employee is not bound to anticipate negligence on the part of the employer is particularly applicable here. The employer's wrong consisted, not merely in the disobedience of the ordinary rules of law which require the master to exercise reasonable care in providing a safe place for the servant's work, but also in his failure to comply with his clear and express promise with reference to known danger. Legal effect must be given to such failure. Floan v. Chicago, M. & St. P. Ry. Co., 101 Minn. 113, 111 N. W. 957. This did not, it is true, exonerate the plaintiff in case he failed to exercise such caution as an ordinarily prudent man would have used under such circumstances. When the elevator would be below a given floor, a cluster of five ropes, each about an inch in diameter, would be in sight; when it would be above that floor, in the shaft would be seen the plunger, eight inches in diameter. Under all the circumstances, one looking into the shaft would have perceived the presence of elongated steel. Inspection would have revealed the difference. A brief course of natural reasoning would have made it clear that the elevator must have ascended. There was, however, a similarity between the cluster of ropes and the plunger. The jury in effect found the resemblance to have been such that plaintiff, engrossed as he was in his work, was not, in view of defendant's promise to warn, negligent in failing to know that the elevator must have gone above him. Its conclusions were sustained by the trial court.

It is elementary that members of this court, a court of appeals, do not pass upon the original question as a matter of personal opinion, as did the jurors. The question here is, not whether the individual members of this court think the defendant was guilty of contributory negligence or assumed the risk, but whether different minds might reasonably differ as to his contributory negligence. Giving the proper force to the consideration of the breach of the specific promise of the master, and to the resemblance, so far as it existed, between the ropes and the plunger, to the verdict of the jury, and to the conclusion of the trial court, reached after vision of sections of the actual plunger and ropes, we are constrained to affirm the ruling appealed from.

The authorities on this subject cited by defendant have been examined. They announce familiar general principles. The facts in no one of them are so similar to those presented by the case at bar as to make it desirable to discuss them in detail. Rink v. Lowry, 38 Ind. App. 132, 77 N. E. 967, is not controlling, but suggestive. There the plaintiff, employed by a telephone company, entered an elevator shaft in defendant's building to repair a telephone. The operator of the elevator assured him that it would not be moved while he was in the shaft. None the less the elevator was moved and plaintiff was injured. Comstock, P. J., said (p. 141): "Appellant cites a number of cases to the effect that the law places a duty upon every person, in respect to his relation with others, to exercise his faculties for his own safety, and that he cannot relieve himself of the duty by an agreement with another to perform it for him. As a general proposition this is correct; but whether a party has been guilty of contributory negligence must depend upon the particular facts of each case. The promises and agreements under which hazard is assumed, the condition existing making effective or ineffective the use of the natural senses, are to be taken into account in determining the question of negligence. * * * The plaintiff was at work in a proper place, not necessarily dangerous if the promise of the appellant, made through his servants, had been kept, and was injured by the negligence of appellant and without contributory negligence on his part, as found by the jury. The judgment is fairly justified by the law and the evidence."

2. Defendant's second contention is that the award of $10,500 damages was excessive.

Plaintiff's testimony tended to show these injuries: He sustained a compound, comminuted fracture of the right arm at the elbow joint. The bones were crushed and the flesh lacerated. It was "just as if some one had grabbed him up here (on the arm) and pulled this whole substance right down over the hand"—"the same as you would take a long glove this way (indicating) and strip it off right down over the hand." There was a wound three inches long on the shoulder. Upon one side of the head there was a scalp wound six or eight inches long, and on the other side one four or five inches in length. "The scalp was torn off." Subsequently the arm was amputated two inches below the elbow. The scalp was sewed, and had healed. It is to be noted that here, as in most of the cases to which reference will hereafter be made, the injury consisted of more than the loss of the arm. With respect to that injury, one element of damage existing in nature and clearly recognized in the authorities is the physical pain and suffering experienced. Another is the decrease in earning capacity. 13 Cyc. 127. These are not, however, the only elements.

In Hickinbottom v. Delaware, 15 N. Y. St. 11, affirming the award of $25,000 for the loss of a right arm, the court said: "Science, coupled with marvelous mechanical skill, has not yet supplied any proximate substitute for that member of the body in its various uses and powers. * * * There are other elements which enter into compensation for the destruction of an arm than pain and suffering and loss of power to earn money. The great deprivation of the capacity which follows to do many things essential to the common comforts of life, preparing food to eat, dressing, lifting, carrying; the numerous uses of the arm for assistance to family or self, for pleasure, or from necessity as a means of defense, aside from the inexpressible sense of the want of that member; the deformity occasioned by its absence; and the depressing effect of the consciousness of a crippled condition —all these are a part of the suffering. These are the consequences of the injury inflicted, and, if the test were what any human being in full health would take for an arm, the sum named would be considered absurd."

It is true that courts have regarded verdicts for similar, less than the present, but not identical, injuries to the arm as "large," but have declined to reduce them. Schultz v. Faribault Cons. Gas & Elec. Co., 82 Minn. 100, 84 N. W. 631; Stauning v. Great Northern Ry. Co., 88 Minn. 480, 486, 93 N. W. 518; Sobieski v. St. Paul & D. R. Co., 41 Minn. 169, 42 N. W. 863. And see Bredeson v. C. A. Smith Lumber Co., 91 Minn. 320, 97 N. W. 977. It is also true that in Louisville v. Lowe, 118 Ky. 260, 80 S. W. 768, 65 L. R. A. 122, a new trial was granted in a case involving the loss of the right arm by a plaintiff who was thirty four years of age, earning only one dollar a day, in which the jury returned a verdict for $13,000. In other cases, injuries to the arm, resulting in permanent injury, but not in the loss of the arm, were reduced as follows: Detzur v. B. Stroh Brewing Co., 119 Mich. 282, 77 N. W. 948, 44 L. R. A. 500, verdict of $10,000 reduced to $3,500 by the trial court; Van Winter v. Henry, 61 Iowa, 684, 17 N. W. 94, verdict of $6,000 reduced by the trial court to $4,-000; Meyer v. Milwaukee, 116 Wis. 336, 93 N. W. 6, a verdict of $3,500 reduced to $2,000 by the trial court.

For the loss of an arm the following amounts have been held not excessive: $9,500, Knapp v. Sioux City, 71 Iowa, 41, 32 N. W. 18 (arm permanently disabled, but not amputated); $10,000, Ketchum v. Texas, 38 La. An. 777; Robinson v. Western, 48 Cal. 409; Baltzer v. Chicago, 89 Wis. 257, 60 N. W. 716; Chicago v. Rembarz, 51 Ill. App. 543; $10,885.62, Sesselmann v. Metropolitan, 76 App. Div. 336, 78 N. Y. Supp. 482 (loss of hand); $11,000, Baird v. New York Central, 172 N. Y. 637, 65 N. E. 1113; Galveston v. Courtney, 30 Tex. Civ. App. 544, 71 S. W. 307; $11,500, Southern Kansas v. Sage (Tex. Civ. App.) 80 S. W. 1038; $12,000, Lafferty v. Third Avenue, 176 N. Y. 594, 68 N. E. 1118; North Chicago v. Dudgeon, 83 Ill. App. 528; $12,500, Rodney v. St. Louis, 127 Mo. 676, 28 S. W. 887, 30 S. W. 150; $13,000, Moran v. Eastern Ry. of Minn., 48 Minn. 46, 50 N. W. 930; $15,000, De Wardener v. Metropolitan, 1 App. Div. 240, 37 N. Y. Supp. 133; Illinois Central v. O'Connor, 90 Ill. App. 142; $18,000, Musser v. Lancaster, 15 Pa. Co. Ct. 430; $25,000, Hickinbottom v. Delaware, supra.

In the light of these principles and precedents, we discover no reason for disturbing the action of the trial court in allowing the verdict to stand.

Affirmed.

ELLIOTT, J. (dissenting).

The opinion concedes that the promise of the employer did not relieve the plaintiff from the duty of exercising such care for his own safety as an ordinarily prudent man would exercise under the circumstances. The elevator shaft was perfectly lighted, and the plunger, a polished steel rod eight inches in diameter, extending from the bottom of the elevator car down to and into the ground, was visible about three feet in front of the plaintiff's eyes. There was nothing in the way. He testified that he knew that when this plunger was visible the car was above him. He also knew that the car was below when he left his work. When he returned the plunger was there immediately before him, and the simplest exercise of the sense of sight would have prevented the deplorable accident. The wire ropes, which, when present, indicated that the car was below, did not in the least resemble the plunger. The plaintiff testified that he understood the construction of the car and its appliances, and that he knew and appreciated the fact that he was working under very dangerous conditions; and yet he did not exercise the slightest care for his own safety.

I therefore dissent.