.VICTOR NUSTROM v. SHENANGO FURNACE COMPANY.[1]

July 24, 1908.

Nos. 15,673—(179).

**Negligence of Master—Question for Jury.**

   In an action to recover for personal injuries caused by the explosion
. of a blast, it is *held* that the question of defendant's negligence in fur-
nishing an unfit and unsafe fuse and plaintiff's assumption of risk and
contributory negligence were for the jury.

Action in the district court for St. Louis county to recover $2,000
for personal injuries alleged to have been received by reason of de-
fendant's negligence in furnishing unsafe fuse. The case was tried
before Cant, J., and a jury which rendered a verdict in favor of plain-
tiff for $1,500. From an order denying a motion for judgment not-
withstanding the verdict or for a new trial, defendant appealed. Af-
firmed.

*E. C. Kennedy,* for appellant.
*S. F. White* and *N. H. McMahon,* for respondent.

JAGGARD, J.

   Plaintiff seeks to recover damages for personal injuries sustained
by him by reason of the negligence of the defendant, and alleges:
Defendant, operating an iron mine at the time of the injury to plain-
tiff, was engaged in digging and blasting out a room for a stable.
There were two kinds of fuse for use in the mine—one for use in
dry places, and another, more costly, for use in wet places. Plaintiff
was set to work in a wet place, and the fuse to be used there should
have been such as was furnished for wet places. The plaintiff pro-
tested against the use of the fuse furnished, and asked for proper fuse.
Defendant refused, and advised plaintiff that the fuse was safe and as
good to use as the other, if well greased.

   On the morning of February 11, 1906, plaintiff and his fellow work-
men had made three drill holes in the side of the stable, filled the
same with dynamite, prepared the fuse furnished by defendant to fire

[1] Reported in 117 N. W. 480.

the dynamite, greased the same in the manner directed by the defendant and commended as rendering the use thereof safe, lit the fuse, and went away. After waiting about ten minutes for the smoke to clear out of the stable, so that they could continue their work, they returned to the place and found that two of the holes had exploded. The third hole thereafter exploded. Plaintiff was injured in the face and eyes.

The answer admitted that the defendant was a corporation operating the mine, and that plaintiff was in its employ and was injured, but denied that the injury was caused by its carelessness and negligence, or that plaintiff was injured to the extent alleged in the complaint. The defendant further alleged that the work in which plaintiff was engaged was such work as was incident to his employment, and put in issue all allegations of the complaint not admitted. The reply was a general denial of the new matter. The jury returned a verdict for $1,500. The appeal was taken from the order denying the usual alternative motion.

1. Defendant's evidence tending to show that only one kind of fuse was used, and that such fuse was fit and proper, was abundant and cogent. It was, however, subject to legitimate criticism, and its weight was a matter of argument. Plaintiff's own testimony, on the other hand, tended to sustain the allegations of negligence in his complaint, and to show that two kinds of fuse were furnished and used, one soft, the other solid, and that the fuse used was neither fit nor proper. Cf. Laitnen v. Shenango Furnace Co., 103 Minn. 88, 114 N. W. 264. His brother's evidence, although not so direct, was in corroboration. Within the familiar rule, there was evidence enough as to this point of controversy to support the verdict, and the refusal of the trial court, who saw and heard the witnesses, to disturb it.

2. The gist of the controversy is whether the evidence shows that as a matter of law the plaintiff appreciated and knew the risks and dangers attending the use of the fuse in question, and assumed the risk of using it. Defendant contends: Plaintiff, according to his own version, had been at work for ten months using the different kinds of fuse, and knew that the fuse furnished here was defective. He continually complained that he had missed blasts very frequently. He not only knew the condition of the fuse, if it was in fact safe or defective, or that there was danger in using it. He knew and appreciated the

danger. Therefore there was no question of fact for a jury as to assuming the risk. When he complained to the captain, there was no promise of a substituted fuse, and no assurance of safety. The captain simply said: "Grease it good, and it will go." His continual use of the instrumentalities must have made it known to him that the captain's judgment was erroneous, and that the fuse did not "work good," as the captain assured him it would. He knew all about the fuse. There was, therefore, no question as to assumption of risks to be submitted to the jury. There was, however, testimony that the plaintiff complained to the captain that the blasts missed when he used the soft fuse. When he used the hard fuse, no shot ever missed. In the testimony, which defendant quotes in its brief, the language of the captain was: "Grease them well, and they will explode." Plaintiff never noticed a shot that hung fire and then finally exploded. He had never in his experience had a shot that hung fire for ten minutes. Plaintiff's knowledge that the fuse missed fire was not necessarily knowledge that it hung fire. He also testified that most of the time he got the good fuse.

In answer to questions by counsel for the defendant, plaintiff testified: "Q. Well now then, if a hole misses it will sometimes hang fire, won't it? A. No; there is no fire when it don't explode. Q. Well, I guess that is right. Sometimes with this fuse the explosion don't go off so quick as it does with the other fuse, does it? A. Oh, about the same; both of them about the same. Q. When you light the good fuse and the poor fuse at the same time, they both go off about the same time, will they? A. There ain't much difference. Q. And the only difference is, then, that the poor fuse will miss? A. Yes. Q. And sometimes a poor fuse hangs fire don't it? A. I don't know whether it hangs fire or not. Q. You never knew it to hang fire? A. No; it won't burn. Q. What is that? A. It won't burn to the end." Defendant's own brief sets forth that plaintiff's evidence tended to show that he had "never noticed a shot that hung fire and then finally exploded. He never in his experience had a shot that hung fire for ten minutes."

It was, moreover, proper for the jury to consider the testimony tending to show that plaintiff was using the defective fuse in accordance with instructions of the foreman. "When we say that a man ap-

preciates a danger, we mean that he forms a judgment as to the future, and that his judgment is right. But if against this judgment is set the judgment of a superior, one, too, who from the nature of the callings of the two men and of the superior's duty seems likely to make the more accurate forecast, and if to this is added a command to go on with the work and to run the risk, it becomes a complex question, on the particular circumstances, whether the inferior is not justified as a prudent man in surrendering his own opinion and obeying the command. The nature and degree of the danger, the extent of the plaintiff's appreciation of it, and the exigency of the work, all enter into consideration, and no universal rule can be laid down." McKee v. Tourtellotte, 167 Mass. 69, 71, 44 N. E. 1071, 1072, 48 L. R. A. 542. And see Larson v. Haglin, 103 Minn. 257, 114 N. W. 958. Under the circumstances the trial court was justified in submitting to the jury whether plaintiff assumed the risk. Atlas v. National Biscuit Co., 100 Minn. 30, 32, 110 N. W. 250.

3. In view, inter alia, of the questions of fact as to plaintiff's lack of knowledge of the tendency of the fuse he used to hang fire, it is obvious that it was a question for the jury, and not for the court, to determine whether plaintiff was guilty of contributory negligence in this: That he did not wait a sufficient length of time or the usual length of time that it took for the smoke to clear away from the blast, but went back too soon.

4. Other assignments of error, on examination, have been found not to justify a reversal. The complaint is sufficient. The charge, construed as a whole, fairly presented the issues raised, and the verdict was not excessive in amount.

Affirmed.