# ADE LEIONEN v. OLIVER IRON MINING COMPANY.[1]

July 2, 1909.

Nos. 16,215—(182).

**Shaft Boss a Vice Principal.**

The plaintiff's intestate, an employee of the defendant, was thrown or fell from a bucket while he was being hoisted from the bottom of a shaft in the defendant's mine to the surface, and was thereby killed. Action to recover damages for his death on the ground of the defendant's alleged negligence in leaving a rubber hose pipe extended across the shaft, with which the bucket came in contact, causing the deceased to fall out of it. *Held*, that the evidence was sufficient to sustain a verdict for the plaintiff, that the shaft boss was a vice principal, and that the trial court made no reversible errors, either in its rulings as to the admission of evidence or in its charge to the jury.

Action in the district court for Itasca county by the administrator of the ·tate of Jacob Hyvonen, deceased, to recover $5,000 for the death of his intestate. The case was tried before McClenahan, J., and a jury which returned a verdict in favor of plaintiff for the sum demanded. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Joseph B. Cotton, Frank D. Adams,* and *C. C. McCarthy,* for appellant.

*John R. Heino* and *Theo. Hollister,* for respondent.

Start, C. J.

On October 25, 1907, the plaintiff's intestate, hereinafter referred to as the deceased, was in the employ of the defendant, and engaged with other employees in sinking a shaft in the defendant's iron mine in the county of Itasca. The shaft, on the day named, had been sunk to the depth of about one hundred fifty feet. There were then two pumps in use in the shaft, one on each side thereof and some twenty-five feet from the bottom, and operated by a pump man, who,

[1] Reported in 121 N. W. 1107.
108 M.—22.

when it was necessary to prime the pumps, used a rubber hose pipe eighteen feet long and one inch in diameter extending across the shaft from one pump to the other. The deceased, with four other men, went to work in the bottom of the shaft about midnight of the day named, and about three o'clock a. m. they got into the bucket or basket, attached to a cable by which the men were lowered into and taken out of the shaft, to be taken to the mouth of the shaft for lunch. While the bucket was being raised, the deceased was thrown or fell out of it to the bottom of the shaft, and was thereby killed.

This action was brought in the district court of the county of Itasca to recover damages for his death, on the ground, as alleged in the complaint, that the defendant negligently permitted the hose on the night in question to be and to remain extended across the shaft from one pump to the other; that the bucket, in which the deceased and his co-employees were being hoisted, caught upon the hose, swinging it to one side, and thereby the deceased was thrown from the bucket and fell to the bottom of the shaft, receiving injuries that resulted in his death. The answer denied the alleged negligence. Verdict for the plaintiff in the sum of $5,000. The defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

1. The defendant's first contention is that there was no evidence to sustain the verdict, therefore it was entitled to judgment notwithstanding the verdict. This general proposition is exhaustively discussed, from their view point of the evidence, by defendant's counsel in their brief, in which the reasons in support of the proposition are urged in detail. It is urged, in effect, that there was no evidence to justify a finding that the hose at the time of the accident extended across the shaft, or, if it did, that it was the cause of the death of the deceased, or that the defendant was guilty of any actionable negligence in the premises.

There was evidence on the part of the defendant tending to show that the ends of the hose were at no time attached to the pumps, and that whenever the hose was used it was simply held against the pump on each side in such a manner as to permit the water to flow into and through the same, and, further, that when the hose was not

in use for priming the pumps it was placed wherever most conveni-
ent, on the wall plates, or hung on a hanging bolt in the wall, or
over a beam dividing the shaft into compartments, with both ends
hanging down by the side of the shaft.

On the part of the plaintiff there was evidence tending to show
that the hose was so constructed that it could be fastened at both
ends to the pump, and that before the accident it had frequently been
so fastened and used; that when the bucket, in which the deceased'
and the other employees were at the time of the accident, reached
the surface the deceased was missing; and, further, that two men who
went down in the bucket to look for the deceased found the hose across
the shaft fastened to each pump and hanging down in a curve or loop,
which they pushed to one side, and on reaching the bottom of the
shaft they found the deceased lying face down in the water.

We are of the opinion that the evidence is sufficient to sustain
the finding, which the jury must necessarily have made under the
charge of the court, that the hose was across the shaft at the time
the bucket was being hoisted in which the deceased started for the
surface. There was no direct evidence that the hose across the shaft
was the cause of the deceased being thrown or falling from the bucket
to his death. Nevertheless the evidence is sufficient to sustain a
finding that his death was caused by the hose. It is undisputed that
he was in the bucket when it started up the shaft and that he was not
in it when it reached the surface. There was, according to the find-
ing of the jury, when the bucket started, a hose across the shaft in
which the bucket was moving. There was no evidence of any other
obstruction therein, or other cause of the accident. In addition to
this there was evidence tending to show that the bucket at the pumps
came in contact with some obstruction, and that it was the hose,
which swung the bucket slightly; that the lights in the men's caps
were put out; that the hose came in contact with one of the men,
who was caught by one of his companions; and, further, that a
voice called out that one man fell. This evidence furnishes a rea-
sonable basis for the inference by the jury of the fact that leav-
ing the hose across the shaft was the cause of the deceased falling
from the bucket.

It is the further contention that there was no evidence to sustain

the finding that the defendant was guilty of negligence in the prem-
ises, for the reason that the hose was one of the necessary and proper
tools or implements furnished by the defendant for the use of its
employees, and it is not liable to one of its employees for any im-
proper use of the hose by any of its other employees.

It may be conceded that this proposition is abstractly correct; but
if it was the duty of the defendant to exercise due care to keep
the passageway for the bucket up and down the shaft free from
obstructions endangering the lives and limbs of its employees, and it
failed in that duty, it would be immaterial whether the obstruction
was one of the tools furnished to its employees for their use in
the course of their employment. The question, then, whether there
is any evidence tending to sustain the finding of negligence on
the part of the defendant, is to be determined from the character and
danger of the work of lowering and hoisting its employees down and
up this shaft. Were they such as to require the supervision of the
defendant or its personal representative? The defendant's mining
captain testified that it was the duty of the shift boss, in the ab-
sence of the captain, to run the work, handle the men, take care
of the safety of the place, and to keep the shaft in safe condition
for the men to go up and down; that the shift boss was expected
to stay in the shaft with the men when they were at work, for the
reason that the place was liable to become dangerous if there was
no one to look after it; that in the absence of the captain the re-
sponsibility of keeping the shaft in a safe condition was upon the
shift boss; that if the hose was left in any place, with its ends fas-
tened, so that it could get across the shaft, it would be dangerous;
that any one in charge of the work ought to take some pains to see
to it that the hose did not get across the shaft; and, further, as fol-
lows:

"Q. He [the shift boss] ought to stay there and be right there look-
ing after his men and the work? A. Yes, sir. Q. And to go away
and leave a place like that, where men were working, knowing that
they had to travel up and down the shaft, to go away and stay for
three hours, with nobody to look after it, would be careless and neg-
ligent, wouldn't it? A. Yes, sir. * * * Q. Was it the shift

boss' duty to see, every time the men came up, that there was no hose, or anything like that, lying across the shaft? Did he have to look all around the shaft to see that there was no hose lying around there? A. He was supposed to look out and see, so everything was clear, of course. Q. Take it when the men was coming up from the bottom; would the shift boss go up ahead and see that everything was clear? A. He generally went up ahead of the men."

It is clear from the evidence that it was the duty of the defendant, as master, to use due care to keep the shaft free from obstructions, and that the shift boss was its personal representative or vice principal for the discharge of such duty, and that the trial court did not err in so instructing the jury. Renlund v. Commodore Min. Co., 89 Minn. 41, 93 N. W. 1057, 99 Am. St. 534; Laitinen v. Shenango Furnace Co., 103 Minn. 88, 114 N. W. 264.

The question, then, of the defendant's negligence, is narrowed to the inquiry whether the evidence was sufficient to justify a finding that the shift boss was negligent in caring for the safety of the shaft. The evidence tended to show that the shift boss, with the pump man, left the shaft and went to the surface at about twelve o'clock of the night of the accident, and, further, that neither of them were in the shaft after that time until after the accident, and in the meantime no one was left in the shaft to discharge the duties of the shift boss. This evidence, in connection with that in reference to the duties of the shift boss, was sufficient to justify a finding that he was guilty of negligence. We find little, if any, evidence in the record tending to show that the deceased either assumed the risks or was guilty of contributory negligence. This question, however, was submitted to the jury, and their finding thereon in favor of the plaintiff is amply sustained by the evidence. The verdict is sustained by the evidence, and the defendant was not entitled to judgment in its favor notwithstanding the verdict.

2. The defendant claims that, in any event, it was entitled to a new trial on account of alleged errors of the court in its rulings as to the admission of evidence and in its instructions to the jury. We find the charge of the court, considered as a whole, to be a full, fair, and correct presentation of the issues to the jury. A consideration of the assignments of error relating to the admission of

evidence leads to the conclusion that there were no reversible errors in the rulings of the court in this respect.

Order affirmed.