RASMUS HENDRICKSON v. CHARLES R. ASH.[1]

November 30, 1906.

Nos. 14,924—(56).

**Master and Servant—Questions for Jury.**
Respondent was employed to work upon a chain carrier in a sawmill. Whether or not respondent was guilty of contributory negligence, or assumed the risks, were questions for the jury, in view of the nature of the apparatus, the character of his duties, his experience, and the lack of proper instructions.

Action in the district court for St. Louis county to recover $20,350 for personal injuries. The case was tried before Dibell, J., and a jury, which rendered a verdict in favor of the plaintiff for $5,000. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Coryate S. Wilson* and *Edmund M. Morgan,* for appellant.
*John Jenswold, Jr.,* for respondent.

LEWIS, J.
Appellant was the owner and operator of a sawmill, which contained a contrivance known as a "chain carrier," on an incline between two sets of live rollers used in carrying material from the band saw. The carrier was about eight feet long, the lower end about two feet above the floor, the same height as the roller tables connected with the band saw, and the other end about six feet above the floor, connected with another set of rollers used in conveying the material outside the building. The bottom of the carrier was about two feet wide, with sides of eight-inch plank, and along the bottom were five sets of endless link chains about three inches apart, and the links of half-inch iron were each provided with two sharp, straight hooks projecting upward from one-half to three-fourths of an inch. These chains operated upon sprocket wheels at each end of the carrier, and revolved rapidly. Between the upper end of the carrier and the upper roller table was an

[1]Reported in 109 N. W. 830.
99 M.—27

open space from four to five inches wide on the side next the operator, and seven or eight inches wide on the opposite side. This space was reduced nearly one-half by the projecting sprocket wheel and chains. There was evidence on the part of respondent to the effect that the planks which composed the roller tables were generally left loose, so they could be removed for the purpose of cleaning underneath; but at the time of the accident the planks of the upper roller table had been nailed down.

Respondent was employed to take care of the square timbers as they came on the rollers from the band saw and see that they were conducted over the carrier and delivered to the upper rollers, and thence out of the mill. He also had to take care of the incline, and if anything stopped there to remove it. On the occasion of the accident two slabs, or parts of slabs, had caught in the incline, one at the bottom and the other at the top. Respondent first released the bottom slab, and then went to the upper end of the incline and took hold of the upper end of the stick, which projected about six inches above the top of the incline table, and in doing so either his mitten, sleeve, or hand was caught by the sharp, projecting spikes in the rapidly revolving chain, immediately drawing his hand and arm into the narrow space between the carrier and the upper roller planks, and, as testified, being unable to release himself, because the planks were nailed down, his arm was torn off at the elbow.

Negligence is predicated upon the fact that appellant had provided a dangerous and unsafe place to work, and a dangerous apparatus, in that the opening at the upper end of the incline was insufficient to permit a person to extricate himself in case he should be caught by the projecting spikes, and in failing to provide proper means of stopping the machine in case of an accident, and, further, in employing respondent, who was an ignorant and unskilled workman, to operate at such a dangerous place without proper instructions and warning as to the danger and risks connected therewith.

Respondent was thirty six years old at the time of the accident, and, though foreign-born, had resided in this country about twenty years and had done work in mines, in a brickyard, for a street railway company, on a farm, and in May and June, 1903, worked in a sawmill of appellant for one and a half months carrying timber to the edgerman,

and seven and a half months at pulling slabs from the live roller table in another part of the mill and throwing them down upon the slasher chain, for which purpose he used a small hand pick, called a "pickaroon." Respondent then worked for a railway company, and was again hired by appellant to work at the carrier chains, and had been in this place three nights when he was injured in the manner stated.

The claim of appellant is that respondent, considering his age and experience in and about sawmills, had complete knowledge of all of the operations of the chain carrier, the manner in which the timber was drawn over it, and the risks attending his duties; and it is asserted that, if he was familiar with all the different aspects of the work, then he assumed the risk or was guilty of contributory negligence.

It will be admitted that respondent knew the chains in the incline conveyor traveled rapidly, that the chains turned around the sprocket wheels at the head of the incline, that the spurs upon each link whirled downward with great speed, and that he saw and knew the size and shape of the opening between the sprocket wheels at the ends of the upper roller table planks. Respondent must have known that, if his clothing got caught by the spurs of the rapidly revolving chains, there would be danger of being hurt.

It will also be admitted that the accident did not occur from any unusual movement of the machinery, or from any anticipated breaking, jarring, or clogging of the chains. It requires no argument to show that the apparatus was an unusually dangerous piece of machinery. The rapidly revolving spurs, through an opening only three or four inches wide, presented a condition sure to inflict serious injury to any one so unfortunate as to come in contact with it. If it were impossible to put a proper guard over such an appliance and still permit the passage of the timber, so much more care was required in providing a proper space for escape in case any one should get caught on the chain spikes, and so much more was it necessary to properly instruct an inexperienced operative. There was evidence to the effect that the operator might easily remove slabs and sticks from the chain conveyor by means of a pick or other instrument, and not be required to take hold of them with the hand; but respondent testified that no such instrument was furnished, and no instructions to that effect given.

It is further evident from the record that respondent's duties were numerous, continuous, and exacting; that he not only had to see that the material from the band saw was properly conducted to the carrier table, and that the dimension timbers were properly delivered and carried out upon the upper roller tables, but it was also his business to remove from the upper roller table the slabs by pushing them off to a chain carrier on the opposite side, and, in addition to all this, see that the carrier table was kept free from slabs and sticks which might become fastened in it.

Respondent testified that, if the planks next to the upper end of the incline upon the upper roller table had been left loose, he could easily have pulled them away and so had plenty of space in which to have extricated himself from the revolving chain. This feature of the case seems important. Although it does not directly appear that respondent remained at work relying upon any representation that the planks were loose, yet it is evident that the apparatus would have been vastly safer had the planks been loose, and respondent's knowledge of the usual condition may be considered in determining whether he appreciated the risks. Although many courts hold to the contrary, it has always been the rule in this state that it is not enough that the servant knew, or ought to have known, the actual character and condition of the defective instrumentality furnished for his use. He must also have understood, or by the exercise of ordinary observation ought to have understood, the risks to which he was exposed by their use. Russell v. Minneapolis & St. L. Ry. Co., 32 Minn. 234, 20 N. W. 149; Wuotilla v. Duluth Lumber Co., 37 Minn. 153, 33 N. W. 551, 5 Am. St. 832; Kaillen v. Northwestern Bedding Co., 46 Minn. 187, 48 N. W. 779; Stiller v. Bohn Mnfg. Co., 80 Minn. 1, 5, 82 N. W. 981; Carlin v. Kennedy, 97 Minn. 141, 106 N. W. 340.

Such, also, is the English rule. Brooke v. Ramsden, 63 Law Times, 287, where it was said that there must be a thorough comprehension on the part of the workman of the danger and the risk, and a voluntary undertaking by him of that risk and danger. Of course, the experience of the workman has much to do with his knowledge of the defects and his ability to appreciate the risks and dangers.

Taking into consideration respondent's experience and means of observation, the location in which he was placed, the different duties he

had to perform, the rapidity of action required, and the lack of special instructions upon the subject, it cannot be said, as a matter of law, that he appreciated and assumed the risks, or that he was guilty of contributory negligence in attempting to remove the slab in the manner stated.

Order affirmed.