HARRY ATLAS v. NATIONAL BISCUIT COMPANY.[1]

January 4, 1907.

Nos. 15,022—(114).

**Assumption of Risk.**

> The question of assumption of defect in machinery and of apprecia-
> tion of risk is ordinarily one of fact not to be arbitrarily decided by
> rules of law, but by proper submission to the jury. Wuotilla v. Duluth
> Lumber Co., 37 Minn. 153, followed and applied.

**Same—Evidence.**

> Plaintiff, a minor, with limited experience in the employ of defend-
> ant, had for about three months operated an unguarded machine which
> conveyed pans to him and carried them away after he had greased
> them by use of pieces of burlap on his hands. The cloth caught on,
> and was wound around, a revolving sprocket wheel, and drew his hand
> and crushed one finger between that wheel and the chain passing over it.
> *Held*, these circumstances presented a question of fact as to assumption
> of risk for the jury.

Action by plaintiff, as father of Louis Atlas, a minor, in the district
court for Hennepin county to recover $1,999 for personal injuries.
The case was tried before Frederick V. Brown, J., who directed a
verdict in favor of defendant. From an order denying a motion for
a new trial, plaintiff appealed. Reversed.

*H. E. Fryberger*, for appellant.

*Cohen, Atwater & Shaw*, for respondent.

JAGGARD, J.

The minor for whose benefit this action was brought, was injured,
while in the defendant's employ, by having one of the fingers of his
left hand caught between the chain and sprocket wheel of a conveyor
in defendant's factory. He was working at one end of a long table
on which pans were moved towards him automatically. He greased
each pan and, lifting it to about the height of his head, placed it on a
conveyor which consisted of chains running over sprocket wheels,
and which carried the pan away from the workmen. There were no

[1]Reported in 110 N. W. 250.

guards over the wheels or chains. When the minor came to work, the foreman told him to cut a piece of cloth about six or eight inches wide and a foot long out of a twine sack, to make a slit in it so that he could slip his hands through the cloth, and to use it for greasing the pans. Plaintiff used such a piece of cloth on each hand to grease the pans before he put them on the carrier. The cloths were changed every fifteen minutes, and were cut out by the workmen themselves. When plaintiff was hired, on September 20, 1905, he was not quite eighteen, but he was eighteen when the accident occurred, on December 23, 1905. He was fairly well educated. He had ridden a bicycle, and understood the operation of the sprocket wheel and chain similar to that used in this machine. He had been working on the exposed wheels and chains during the period of his employment. In his own language, the accident occurred as follows:

> I greased the pans, and I threw the pan up, and the rag— the cloth—caught in the cog wheel and wound around the cog wheel, and pulled my hand right into the cog, and cut my finger off. It was cut in the cog wheel, between the cog wheel and the chain.

The court granted a motion for a directed verdict, on the ground that the plaintiff, having full knowledge of the danger, assumed the risk. From its order, denying plaintiff's motion for a new trial, this appeal was taken.

The substance of plaintiff's appeal is that the mere fact of the servant's knowledge of the failure of the employer to guard the machinery did not necessarily charge him with the assumption of the risks growing out of that defect in the machinery. "The question is: Did he know or ought he, in the exercise of ordinary common sense and prudence, to have known the risks to which the condition of the instrumentalities exposed him?" Mitchell, J., in Wuotilla v. Duluth Lumber Co., 37 Minn. 153, 33 N. W. 551, 5 Am. St. 832. The principles in this connection are familiar and well established. In Antletz v. Smith, 97 Minn. 217, 106 N. W. 517, this court held, per Mr. Justice Elliott, that the "degree of risk to which the employee may subject himself without becoming responsible for the consequences is not easy to determine, and unless the danger is very obvious and imminent it

should be left for the jury to say whether the act was that of a person of ordinary prudence." In Gray v. Commutator Co., 85 Minn. 463, 89 N. W. 322, this court held, per Mr. Justice Lovely, that "while the lack of specific warnings or instructions in regard to the operation of a piece of machinery would not absolve a servant from responsibility for the assumption of the risk which, with the exercise of ordinary intelligence, he could have known, or appreciated, this is ordinarily a question of fact for the determination of the jury upon all the circumstances of the case." This principle was applied by this court to a more extreme case than the one at bar, in Hendrickson v. Ash, 99 Minn. 417, 109 N. W. 830. The rule thus adopted by this court is in harmony with the English authorities.

The whole subject and the relevant decisions are elaborately considered in the leading case of Smith v. Baker, App. Cas. (1891), 325 to 370. The principle of that decision and its theory that the question of assumption of risk is one of fact to be decided by no arbitrary rule of law, but rather to be submitted to the jury is thus formulated by Lord Watson at page 355: "When, as is commonly the case, his [the servant's] acceptance or nonacceptance of the risk is left to implication, the workman cannot reasonably be held to have undertaken it unless he knew of its existence, and appreciated, or had the means of appreciating its danger. But assuming that he did so, I am unable to accede to the suggestion that the mere fact of his continuing at his work, with such knowledge and appreciation, will, in every case, necessarily imply his acceptance. Whether it will have that effect or not depends, in my opinion, to a considerable extent upon the nature of the risk, and the workman's connection with it, as well as upon other considerations which must vary according to the circumstances of each case."

The conflict on this point in American decisions is exhaustively set forth in the opinion of the majority of the court, and in the dissenting opinion of Thayer, J., in St. Louis Cordage Co. v. Miller, 126 Fed. 495, 524, 61 C. C. A. 477, 63 L. R. A. 551.

The federal supreme court, as will subsequently be pointed out, has applied the rule as to jury trial in force in this state. No new consideration nor authority has been called to our attention which would lead us to alter it. Indeed, repeated occasions to examine its

operation tends to the conviction of its soundness, because, inter alia, any other rule would lead to a practical repeal by the judiciary of substantial provisions of the legislative act requiring owners of machinery to provide guards and means of protection against harm to their employees, the dangers of which are, in large measure, necessarily open to observation.

It is elementary that the age, knowledge, and experience of the operator are considerations to be weighed by the jury in connection with all other circumstances tending to show his appreciation of the risk. That this plaintiff had been at work at this particular machine, in the same condition in which it was at the time he was hired, for some three months, does not conclusively attribute to him knowledge and appreciation of risk. In Washington & G. R. Co. v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235, the employee injured while placing a belt on a pulley, had been engaged in that occupation for nearly eighteen months. The peril was as obvious in one case as in the other. The federal supreme court held that to be a case for the jury.

Cross-examination by the defendant tended to show not only that the minor knew that the cloth might be caught in the chain on the sprocket and his hand dragged into the chain, but also that he, therefore, tried to keep it away from the sprocket and chain. The witness, however, also testified that he thought the loose burlap cloth might tear so that he could get his hand out. His whole testimony must be construed in the light of the facts that he had never had any previous experience with machinery, except with a bicycle, and that his knowledge of the meaning of the English language was very limited. He did not know what the word "realized" or "exposed" meant. He was asked: "Do you know what the word 'engaged' means?" He answered "No; yes." While the case is an extremely close one, we think the trial court should have resolved the doubts in favor of its submission to the jury.

Order reversed.