# PETER PETERSON v. MERCHANTS ELEVATOR COMPANY.[1]

## May 20, 1910.

## Nos. 16,523—(99).

**Injury from unprotected machinery — questions for jury.**

In an action for the death of one of defendant's employees by coming in contact with uncovered and dangerous machinery, it is *held* that the questions of defendant's negligence, the employee's contributory negligence, and assumption of risk were properly submitted to the jury.

**Conversation with deceased servant — evidence by stockholder of defendant.**

A stockholder in a corporation, though acting in the capacity of manager or superintendent, cannot be heard to give in evidence a conversation with a deceased employee upon matters material to the issues in litigation against the corporation for wrongfully causing his death.

**Excessive damages.**

Damages awarded by the jury *held* not excessive.

Action in the district court for Hennepin county by the administrator of the estate of Magnus Johnson, deceased, to recover $5,000 damages for the death of his intestate caused by defendant's alleged negligence while employed in its grain elevator. The answer alleged Johnson's death was the result of his own carelessness and negligence; that he was an experienced man in and about elevators of the kind in which he was employed at the time of his death, that he had been employed in similar work with similar hazards for a period of upwards of twenty years, and that he well knew and appreciated all of the dangers in and about the machinery that caused his death. The reply was a general denial. The case was tried before Simpson, J., and a jury which returned a verdict in favor of plaintiff for the amount demanded. Defendant's motion for an instructed verdict

[1]Reported in 126 N. W. 534.

in its favor was denied. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Trafford N. Jayne,* for appellant.
*Mead & Robertson,* for respondent.

BROWN, J.

Defendant was engaged in operating a grain elevator in the city of Minneapolis. Plaintiff's intestate was in its employ as a laborer, and was killed while in the discharge of his duties by coming in contact with an uncovered dangerous machine, and this action was prosecuted by his personal representative in behalf of the next of kin. A verdict was returned for plaintiff, and defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

The short facts are that on the second floor of defendant's elevator, in which decedent was at the time of his death engaged at work, defendant operates two electric motors, designated in the record as motor No. 1 and No. 2, supplied with electricity from outside the building. Attached to motor No. 2, and a part of its running gear, are two sets of cogwheels, one twenty-four and the other six inches in diameter. A shaft attached to these wheels makes nine hundred revolutions a minute, and the wheels when uncovered were a source of extreme danger to any workman coming in contact with them. A cover had been provided for the same but was not attached at the time of the accident. The motor became out of order, and on November 5, 1908, was taken out for repairs, and was returned and installed in the proper place on the nineteenth of the same month. For some reason it did not work properly on its return, and the cover to the cogwheels was not replaced; the reason for this action being to enable the employees to learn the nature of the defect preventing its proper operation. The cover remained off until the day of decedent's death, a period of about nine days. Decedent, while attempting to oil some of the bearings of the motor, was caught in the cogwheels and almost instantly killed.

1. It appearing to have been practicable, it was the duty of defend-

ant, under the statutes, to guard or cover the cogwheels, to the end that employees engaged in work about the motor might be protected from injury. The court so charged the jury, and of this no complaint is made. A cover had been provided, but for a week or more had not been in place, and the dangerous part of the machine was exposed. The trial court recognized the rightfulness of defendant's conduct in leaving the cover off for the purpose of discovering the defect in the mechanism of the motor, but submitted to the jury to determine whether the failure to replace the cover within nine days was reasonable or unreasonable, saying, in effect, that defendant had the right to remove the cover for the purpose stated for a reasonable length of time. In this view we discover no reason for disagreeing with the trial court. The question whether the machine was left uncovered for an unreasonable time was properly submitted to the jury, and we affirm their conclusion that defendant was chargeable with negligence in not sooner discovering the defect referred to and replacing the cover. Davidson v. Flour City Ornamental Iron Works, 107 Minn. 17, 119 N. W. 483.

. 2. The principal contention on the facts is that decedent assumed the risks of working about the uncovered motor, and therefore plaintiff cannot recover. Our conclusion upon this branch of the case is that the question was properly submitted to the jury.

Decedent had been in the employ of defendant for two or three months, during which time he had been engaged in different kinds of work, among other things being charged with the duty of oiling the machinery whenever directed to do so, or whenever in his judgment it was necessary or proper. He was, however, a common laborer, not a mechanic, and not shown to have been familiar with the construction and operation of the motors used in this elevator. Another servant, one Noreen, had charge of this particular motor, and the evidence tends to show that he attended to the matter of oiling its various parts during all the time it remained uncovered up to the day decedent met his death. On the morning of that day decedent was set to work on the floor upon which this motor was located, and within one-half hour thereafter was killed in attempting to oil the machine. Though he was a man of mature years, and had

worked about similar elevators eighteen or twenty years, the evidence is far from conclusive that he knew the cover was off the motor at the time he was killed. Nor is it conclusive that he had worked about the motor previously, or attempted to oil it, knowing that the cover had been removed. Of course, when approaching the machine, he could by the exercise of ordinary care have discovered the absence of the cover; but whether he understood and appreciated the dangers incident to the work was, on the evidence, a fair question for the jury to determine.

We are bound to presume, in the absence of evidence to the contrary, since he is dead and not here to speak for himself, that he exercised due care for his own protection. The evidence is ample that he was caught in the machine and there killed. Hawkins v. Great Northern Ry. Co., 107 Minn. 245, 119 N. W. 1070, 1135; Seely v. Tennant, 104 Minn. 354, 116 N. W. 648. The evidence is not so conclusive that he had a general knowledge of and familiarity with the dangers incident to the uncovered motor as to justify the conclusion, as a matter of law, that he assumed the risks of his employment. Christianson v. Northwestern Compo-Board Co., 83 Minn. 25, 85 N. W. 826, 85 Am. St. 440; Rase v. Minneapolis, St. P., & S. Ste. Marie Ry. Co., 107 Minn. 260, 120 N. W. 360, 21 L.R.A.(N.S.) 138. Nor can it be said, as a matter of law, that he was guilty of contributory negligence. Defendant is not, therefore, entitled to judgment notwithstanding the verdict; and, as the court below by its order denying a new trial has determined that the jury fully and fairly considered the evidence, we discover no reason for ordering a reversal or granting a new trial.

3. Defendant called as a witness one of its stockholders, J. C. Hensey, superintendent in charge of the elevator, and elicited from him the fact that some time prior to the accident he had a conversation with decedent in reference to the motor and the uncovered cogwheels, and he was asked the question, "What was the conversation?" Upon the fact appearing that the witness was a stockholder in defendant corporation, the court sustained plaintiff's objection to the question, based upon section 4663, R. L. 1905, which prohibits the giving in evidence by a party or person interested in an action.

a conversation with a deceased party or person. The subject was referred to again later in the examination of the witness, and he was asked whether he said anything to decedent about oiling the motor, and the court again sustained plaintiff's objection. Again, at the close of the trial, counsel interrogated the witness further in reference to a conversation with decedent, the last question being, "But you did have some talk with him after the hood had been taken off the gear?" To which the witness answered in the affirmative. Upon objection being made to further evidence along that line, counsel offered to show that the witness warned decedent of the dangers of working about the motor when the cover was off and instructed him how safely to oil it. The court sustained plaintiff's objection, and the ruling is assigned as error.

The fact that the witness was a stockholder in the corporation was not disputed, and the question presented is whether he came within the provisions of the statute respecting the admissions of evidence of conversations with a deceased person. The question does not require extended discussion. That the witness was an interested party, within the meaning of the statute, cannot be seriously questioned. He was a stockholder and pecuniarily interested in the result of the action—a direct, and not a remote or speculative, interest.

The case of Perine v. Grand Lodge, 48 Minn. 82, 50 N. W. 1022, is not in point. The defendant in that case was a mutual benefit association, and the person called as a witness for the purpose of giving a conversation with a deceased member, upon whose certificate of membership the action was founded, was not a member of the association at the time the conversation took place, and, though he was such when called as a witness, he did not become a member until after the death of the certificate holder, and not until the rights of the parties thereunder had become fully vested. His interest in the result of that action was extremely remote, and not such as to come within the meaning of the statute.

We need not stop to inquire whether in an action of this kind a stockholder of a corporation, who is also its superintendent and manager, may be heard to testify to the fact that in his capacity

as manager or superintendent he warned an employee, since dead, of the dangers of his employment, and which dangers were the cause of his death. Robbins v. Legg, 80 Minn. 419, 83 N. W. 379. Such is not the question here presented. The examination of the witness upon this subject clearly indicated to the court below that the warning, if any was given, was the result of a conversation with decedent. The witness, on the occasions when the subject was under inquiry, was asked whether he had a conversation or talk with decedent, and, upon an affirmative answer being given, finally made the offer to show the warning; and though at one point in the examination of the witness counsel stated that he did not intend to show a conversation, it is clear that the "warning" was in fact a part of a conversation and was properly excluded.

4. Defendant also contends that the damages awarded, $5,000, are excessive, and that for that reason a new trial should be granted. In this we do not concur. Decedent was an industrious man, with a wife and several children, a number of whom were minors, and had a natural expectancy of life for about nineteen years, and was earning a competency of $2.25 per day. The trial court has approved the amount, and we do not feel justified in interfering with the conclusion there reached. Bolinger v. St. Paul & D. R. Co., 36 Minn. 418, 31 N. W. 856, 1 Am. St. 680; Johnson v. C. A. Smith Lumber Co., 99 Minn. 343, 109 N. W. 810.

We have fully considered all other assignments of error, and discover no reason for reversing the order of the court below.

Order affirmed.