## PETER KANZ v. J. NEILS LUMBER COMPANY.[1]

June 2, 1911.

Nos. 17,026—(123).

**Dangerous machinery — duty to servant of independent contractor.**

The owner of a mill owes the statutory duty to guard dangerous machinery, not only to his servants, but to a servant of an independent contractor, when such servant is employed in the mill about such dangerous machinery, with the owner's knowledge, and where the independent contractor has no control over such machinery.

**Question for the jury.**

Whether defendant was negligent in failing to guard the machinery involved in this case was, on the evidence, a question for the jury, and the verdict is sustained by the evidence.

**Evidence — assumption of risk.**

It does not conclusively appear from the evidence that plaintiff assumed the risk or was guilty of contributory negligence.

**Rulings on admission of evidence.**

The trial court did not err in its rulings on the admission of evidence or in its instructions to the jury.

**Excessive damages.**

The damages awarded are not excessive.

Action in the district court for Cass county by the guardian ad litem of Peter Kanz to recover $15,000 for personal injuries. The substance of the pleadings is given in the fifth paragraph of the opinion. The case was tried before McClenahan, J., and a jury which returned a verdict in favor of plaintiff for $13,750. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Thomas J. Davis,* for appellant.
*Charles Loring* and *Samuel A. Anderson,* for respondent.

[1]Reported in 131 N. W. 643.

[Note] Liability of master to employes of contractor for unsafe appliances or place of labor, see note in 26 L.R.A. 524.

BUNN, J.

Defendant, during the year 1908, owned a sawmill at Cass Lake containing the usual machinery for manufacturing lumber from logs. On the extreme south side of the mill were six circular saws thirty-six inches in diameter, set four feet one inch from each other, and used for cutting slabs into lath stock. About seven and one-half feet to the north of these saws stood the edger table, supported on I-beams. To the north of this edger table were located other tables and saws. Under these tables ran a set of conveyor chains, placed about three feet apart. These chains moved across the floor from north to south, and at a point immediately under the south I-beam that supported the edger table turned down through the floor on sprocket wheels which were set on a shaft that ran under the floor. The holes in the floor in which the sproket wheels turned extended out from under the I-beam about four inches. These holes were about four inches wide and ten inches long. The I-beam was about twelve inches above the floor, and rested on blocks at each end. Between this I-beam and the set of saws before mentioned, called the "slasher saws," was a sloping floor, commencing at the point where the sprocket wheels were set, and rising to a point immediately behind the slasher saws. This floor was about nine feet wide, between the I-beam and the saws, and some twenty-two feet in length, and was called the "slasher table." On this slasher table another set of conveyor chains moved towards the saws. All the chains moved about half as fast as a man can walk, and material from the various tables which was suitable only for lath stock was thrown on the chains, carried across the mill, under the I-beam of the edger table, and up the slasher table to the slasher saws, where it was cut into four feet one inch lengths and dropped into a conveyor behind the saws, and thence taken to the north side of the mill to be made into laths in the lath mill. This lath mill was on a floor somewhat lower than the main floor of the mill.

In 1908 defendant and one John Kreiling entered into a contract, by which Kreiling agreed to manufacture into lath during the season all material which defendant was desirous of having manufactured into lath, at an agreed price per thousand. The contract pro-

vided that defendant should furnish all machinery and supplies, and that Kreiling should do all the millwright work in the lath mill that was necessary to keep the machinery in good running order. It was further provided that Kreiling was to hire a man to attend to the slasher, and that defendant was to pay Kreiling seventeen and one-half cents per hour for the services of such man.

In August, 1908, Kreiling hired plaintiff to attend to the slasher on the night shift. It was his duty to arrange the slabs that were being carried on the conveyor chains up the slasher table to the saws so that the material would make the most lath stock possible. It was necessary for him, in the performance of this duty, to go upon the slasher table while the chains were in motion to straighten out and arrange the slabs as they approached the saws. The space in which he was required to work was twenty-two feet long and seven and one-half feet wide. There was a lever by which the chains could be stopped, if occasion demanded. Plaintiff was provided with a long-handled pick, called a "pickaroon," with which to catch hold of slabs and arrange them so they would strike the saws properly.

On September 3, 1908, after he had been working for about three weeks, plaintiff attempted to straighten a long slab that was approaching the saws by inserting his pickaroon in one end of it for the purpose of jerking it away from the saws. As he made a quick pull, the pick came out of the slab, he lost his balance, and slipped backward into one of the holes in which the sprocket wheels were that carried the chains. His left foot was caught by the projecting dogs on the chain, forced into the hole, and crushed and mangled to such an extent that an amputation of the leg is necessary.

This action was brought to recover damages for the injuries so sustained. The complaint alleges negligence on defendant's part in failure to guard the holes in which the sprocket wheels ran, and in the failure to instruct or warn plaintiff. The answer alleged that plaintiff was the servant of Kreiling, and not in defendant's employ, denied that defendant was negligent, and alleged assumption of risk and contributory negligence. The trial court held that the relation of master and servant did not exist between defendant and appellant, but submitted the case to the jury on the question of defendant's

failure to guard the hole where the sprocket wheel ran, in effect instructing the jury that it was negligence not to guard these holes unless it was impracticable to do so. The verdict was for plaintiff in the sum of $13,750. Defendant made an alternative motion for judgment notwithstanding the verdict or for a new trial. This motion was denied, and defendant appealed.

Defendant's first contention here is that, as the relation of master and servant never existed between it and plaintiff, as the trial court held, plaintiff failed to prove the basic fact upon which the action rested, and therefore cannot recover. But if the evidence showed that defendant owed plaintiff a duty, and failed to perform such duty, it was not necessary to prove that the relation of master and servant existed.

Defendant claims that the negligence, if any, was the negligence of Kreiling, and not the negligence of defendant. This claim is based upon the theory that the holes through which the sprocket wheels and chains passed were not large enough as originally constructed to be dangerous, and that under the contract between defendant and Kreiling it was Kreiling's duty to make repairs. There are two sufficient answers to this claim. It is not true that the holes were safe as originally constructed, or at the time of the Kreiling contract; and it is not true that under that contract Kreiling had either the duty or the authority to make repairs on the slasher table. This table and the saws were not in the lath mill, and it was defendant's duty, not Kreiling's, to comply with the statutory requirements relating to the guarding of dangerous machinery. The evidence of the failure to warn and failure to instruct plaintiff, though not evidence of negligence on the part of defendant, in view of the court's ruling that the relation of master and servant did not exist, was properly received on the question of plaintiff's knowledge of the danger, and bore directly on the questions of contributory negligence and assumption of risk. The court properly refused defendant's requests for instructions to the jury to disregard this evidence.

Error is predicated upon the failure of the trial court in its charge to distinguish between negligence in the construction and maintenance of the slasher table and machinery and negligence in

failing to guard such machinery. There was no occasion to make this distinction. The court very clearly submitted only the question of failure to guard, and defendant has no ground to complain that the other question was not left to the jury. We think it clear that defendant owed plaintiff the duty to guard these sprocket wheels and chains in the holes if it was practicable to do so, whether he was strictly defendant's servant or Kreiling's. He was employed, with defendant's knowledge, to work on this slasher table, which was entirely under defendant's control.

We are clear that the evidence made a case for the jury on the question of defendant's negligence. We have already disposed of the contention that it was necessary for plaintiff to show that the machinery was in need of guards at the time the contract with Kreiling was made. It was a fair question for the jury, on the evidence, whether it was practicable to guard or protect the machinery so as to have avoided this accident, and we think their verdict on this point is sustained by the evidence.

It was not conclusively shown that plaintiff assumed the risk. Considering his age, experience, and knowledge of the dangers, it cannot be said as a matter of law that he appreciated the danger of his losing his balance and stepping into one of these holes. Of course, plaintiff knew the holes were not guarded, and that they projected out from under the I-beam; but it was for the jury to say whether he knew or ought to have known, that the holes were large enough to permit his foot to be drawn in, and whether he had any reason to expect that in the performance of his duties his feet would be near enough to the holes to make it dangerous.

The evidence does not conclusively show that plaintiff was guilty of contributory negligence. It is claimed that he ought to have used the lever and stopped the chains before attempting to straighten the slab; but it is clear from the evidence that it was proper and necessary for plaintiff to frequently go upon the slasher table while the chains were moving in order to arrange the slabs, and that the chains were stopped only when the mill was about to be shut down, or in the event of a clogging under the I-beam. It was evidently not contemplated that he should stop the chains each time it was neces-

sary to arrange a slab so it would strike the saws properly, and the evidence is quite clear that at the time he was hurt plaintiff was performing his duties in the manner that he was expected to perform them.

There was no error in overruling defendant's objection to a question asked of the witness Dexter on cross-examination.

The evidence as to a change in the location of the shaft, sprocket wheels, and holes after the accident was properly admitted for the purpose of showing the practicability of guarding the machinery in this way, and the court in its charge expressly stated that the jury should consider this testimony only on this point.

If there was error in admitting evidence as to the construction and location of similar machinery in another mill, it was clearly error without prejudice.

We do not think that the damages awarded are excessive.

Order affirmed.