# CHRIST LARSON v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 3, 1925.

No. 24,510.

**Question for jury whether engineer was negligent.**

1. Whether the engineer's act, in running the train while the fireman was replacing a light bulb in the locomotive headlight, was negligence, in view of the position to be occupied in doing the work, was for the jury.

**Fireman within scope of his duty.**

2. The jury could find that the fireman undertook the work at the engineer's request, and that he did not go outside the scope of his duties.

**Assumption of risk.**

3. The defense of assumption of risk was a jury question.

**Whether verdict is excessive not determined solely by decedent's past support of dependent.**

4. Past contributions to the support of a dependent from one who has met death through another's negligence is not the sole criterion by which to measure the damages recoverable. The ability of the deceased, his obligation, and the means to compel performance of the obligation to give adequate support to the dependent in the future may also be considered as factors. The verdict is not so excessive as to indicate passion or prejudice.

**Charge covered refused requests.**

5. No error was made in refusing requests substantially covered in the charge.

*Headnote 1.   See Master and Servant, 26 Cyc. p. 1477.
Headnote 2.   See Master and Servant, 26 Cyc. p. 1462.
Headnote 3.   See Master and Servant, 26 Cyc. p. 1478.
Headnote 4.   See Death, 17 C. J. p. 1324, § 193; p. 1350, § 235.

[1]Reported in 203 N. W. 57.

Action in the district court for St. Louis county to recover $25,000. The case was tried before Fesler, J., and a jury which returned a verdict for $6,000. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Baldwin, Baldwin, Holmes & Mayall,* for appellant.
*McHugh & O'Donnell,* for respondent.

HOLT, J.

Defendant appeals from the order denying its motion in the alternative for judgment non obstante or a new trial.

Plaintiff's intestate, a locomotive fireman, while in defendant's employ, was killed under these circumstances: The engineer and fireman were called upon to operate an interstate freight train out of Superior, Wisconsin, a little after midnight of August 18, 1923. Neither man ordinarily worked upon this train, and they had never before worked together. After starting the train and before it got out of the yard limits, the engineer noticed that the locomotive headlight was not burning. The train was then moving about 6 miles an hour and was nearing a cross-over track whereupon another train was then expected to pass. Without stopping the train the engineer took a light bulb and a torch and was about to climb out of the cab upon the fireman's side to go around to the front of the locomotive to insert the bulb instead of the one suspected of having burnt out. The fireman offered to go, and the bulb and torch were handed him. No light appearing after the lapse of what the engineer deemed a sufficient time to make the repair, the train was stopped. The fireman was found, some distance back, dead—the right hand wheels of the locomotive and cars having passed over his body. He had evidently stood in front of the headlight and taken hold of the handles of the glass cover, twisted the same a couple of inches which released from the lugs holding it in place, for the cover was found near the body. In this precarious position on a narrow plank, with this cover, weighing from 10 to 15 pounds either unexpectedly coming loose, or being of more weight than supposed, or because of some unlooked for motion of the locomotive, he lost

his balance. The bulb could have been replaced by opening a small side-door on the left side of the headlight cage and pulling out the reflector half way. To one who knew of this arrangement, the danger with replacing the bulb while the train was in motion might not have been exceedingly great. It appears that on some engines the glass cover is removed to replace light bulbs, and that the contrivances for so doing are not alike upon all types of engines.

The negligence alleged was failure to provide the locomotive with a proper headlight, failing to stop the train while the headlight was repaired, and failure to provide deceased a safe place to work. The court charged the jury that there was no evidence to sustain the first allegation of negligence above mentioned, but left the jury to say whether defendant was negligent in respect to the other two.

Defendant does not seriously contend that to operate the train while the fireman was undertaking to replace the light bulb in the manner he evidently proceeded to do was not negligence. The place to do that work was then not reasonably safe. To take off this heavy glass cover he would have to use both hands holding them directly above his head, and stand, facing the front of the hot boiler, with the upper part of his body leaning slightly backwards, upon a narrow plank some 10 or 12 feet from the ground. The only excuse for not stopping the train was that it was so heavy that it started with some difficulty. To attempt to run the train at all without the headlight burning was, as a matter of law, negligence as to one who might be injured on crossing in front thereof or upon approaching on the same track. If the engineer's negligence was a proximate cause contributing to the death of the fireman, defendant is, of course, chargeable therewith.

But reliance for judgment non obstante is chiefly placed on the grounds that the fireman went outside the scope of his employment and that he assumed the risk. The engineer testified it was his duty and not that of the fireman to repair the light. But he also admitted that he was in charge of the fireman who was subject to his orders. It is obvious that when the engineer concluded to run the train while the headlight was being repaired, he must of necessity direct the fireman to either take the throttle or undertake the re-

pair. It was impossible for the engineer to attend to both at the same time. That the fireman offered to replace the light bulb is unimportant. The engineer handing him the implements to use in making the repairs was equivalent, in the position he occupied towards the fireman, to a direction or order to the latter. It was not a time or place to discuss whether or not the work to be done was strictly within the duties of one or the other. To the safe operation of a train there must be prompt obedience by each one of the crew to the directions, express or implied, of the one in charge. It cannot therefore be said, as a matter of law, that the fireman went outside the scope of his employment when he undertook to repair the headlight. The jury could find that he went in obedience to the desire or direction of the engineer. This is not a case of disobedience of orders as in Green v. B. & N. M. Ry. Co. 85 Minn. 318, 88 N. W. 974. Nor was it an act of which his superior did not know or might not approve, as was the claim in Bork v. Keller Mnfg. Co. 126 Minn. 203, 148 N. W. 113.

We also think it was for the jury to determine whether the fireman assumed the risk. In order to assume the risk there must be knowledge and appreciation of the danger involved in the undertaking. Peterson v. Merchants Elev. Co. 111 Minn. 105, 126 N. W. 534; Roach v. G. N. Ry. Co. 133 Minn. 257, 158 N. W. 232. It is quite clear that the fireman was unacquainted with the construction of the headlight, and did not appreciate the danger connected with removing the heavy glass cover. The burden of proving assumption of risk was defendant's. There was no evidence that decedent had ever before replaced a light bulb on this or any other locomotive, or that he knew there was a side door to the headlight cage through which replacement could be made without removing the glass cover. The reasonable inference is that he did not know. To one not knowing of the door, the handles sticking out on either side of the glass cover invited attention as a means of reaching the light bulb immediately inside.

The question of contributory negligence was properly submitted, and, if found, its effect in reduction of damages. But it is said that, notwithstanding the correctness of the instruction and the presump-

tion that the jury conformed thereto, the verdict is so excessive that it should not stand. The sole beneficiary was a son 6 years old. The verdict was $6,000. Deceased had been divorced at the suit of his wife. She had married again. It is true, the evidence shows a meager support to the wife and child after the divorce, she retaining the custody of the child. But it appeared that deceased had difficulty in obtaining work about that time. However, he was capable of earning good wages, and firemen are in line of promotion to engineers where higher wages obtain. The fact that in the past he had neglected his duty does not prevent the jury from considering that, had not death come, he might have had a change of heart towards his child so as to do his full duty by him or that, having the ability, he might be compelled to adequately support and educate him. The case cited by defendant, Fogarty v. N. P. Ry. Co. 85 Wash. 90, 147 Pac. 652, L. R. A. 1916C, 803. illustrates that the jury, in fixing damages sustained by a dependent through a death caused by a defendant's tort, may not only take into consideration how the obligation of support has been performed in the past, but also how it should be performed in view of the abilities of the deceased and the means available for compelling performance. Ingersoll v. Detroit & M. Ry. Co. 163 Mich. 268, 128 N. W. 227, 32 L. R. A. (N. S.) 362. While large, we do not regard the verdict so excessive that it must be inferred the jury were actuated by passion or prejudice.

The errors assigned on the refusal to give defendant's requests 8 and 9 do not appear to us well taken. The court clearly and tersely limited recovery to the amounts which the son alone might expect and that only till his majority.

The order is affirmed.

QUINN and STONE, JJ. (dissenting.)
We are unable to concur in the foregoing opinion as to the liability of the defendant, or as to the amount of the verdict.