## LIBERTY MUTUAL INSURANCE COMPANY AND ANOTHER v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 25, 1928.

No. 26,712.

**Assumption of risk in use of defective appliance.**

1. It is the general rule that a person engaging in any employment assumes the risks ordinarily incident thereto; but, where a defective appliance is furnished, it cannot be held as a matter of law that he assumed the risk of an attempt to use it unless it appears that he knew the danger and ought to have understood and appreciated the risk.

**When original wrongdoer is not relieved from liability for his negligence by an intervening act.**

2. An intervening act which is induced by the situation created by the original negligence will not relieve the original tortfeasor from liability, if he could reasonably have anticipated that the situation so created might lead to an act likely to result in harm to someone.

[1]Reported in 219 N. W. 755.

Master and Servant, 39 C. J. p. 705 n. 21; p. 1183 n. 87.
Negligence, 29 Cyc. p. 500 n. 5.
Railroads, 33 Cyc. p. 908 n. 62.

See 26 A. L. R. 890; 18 R. C. L. 676; 3 R. C. L. Supp. 841; 5 R. C. L.
Supp. 997; 6 R. C. L. Supp. 1081; 7 R. C. L. Supp. 606.

Plaintiffs appealed from an order of the district court for Ramsey county, Hanft, J. denying their motion for a new trial. Reversed.

*Sanborn, Graves & Ordway* and *John W. Fischbach,* for appellants.

*A. L. Janes, J. H. Mulally* and *Fletcher Rockwood,* for respondent.

TAYLOR, C.

Math Piringer was injured while in the employ of plaintiff St. Paul Foundry Company. He was awarded compensation therefor which is being paid by plaintiff insurance company as compensation insurer. Alleging that the accident which caused the injury resulted from the negligence of the railway company, plaintiffs brought this action under G. S. 1923, § 4291(2), to recover damages. Guardians appointed for Piringer as an incompetent intervened in the action in his behalf but withdrew therefrom at the trial. The court directed a verdict for defendant, and plaintiffs appeal from an order denying a new trial.

The facts are undisputed. Defendant delivered coal and coke at the plant of the foundry company in hopper-bottom cars to be unloaded by the employes of that company. On the day of the accident, November 9, 1925, a car of coke and a car of coal were at the plant to be unloaded. Math Piringer and John Gressman unloaded the coke and then went to the car of coal to unload that. The car was divided into four equal compartments, two on each side of the center line. Each compartment had four trapdoors in its bottom hinged along the center of the car, and had a steel shaft extending from one end of the car to the other end of the compartment to which the outer end of the four trapdoors was attached by chains. This shaft was near the outer edge of the car and revolved in iron

slots which permitted the entire shaft to move laterally. To close the trapdoors the shaft is revolved, winding the chains around it. When the chains are wound up sufficiently to close the doors, the shaft rolls laterally underneath their outer ends and holds them in place. To dump the load the shaft is rolled laterally from underneath the ends of the doors permitting them to drop. When they drop they cause the chains to unwind and the shaft to revolve. The shaft is operated by a ratchet device attached to the corner of the car and covered by an iron housing. It is worked by a lever inserted in a socket provided for that purpose.

Piringer and Gressman dumped the coal in one compartment by means of this ratchet device and then went to the other compartment at the same end of the car. They found that the entire ratchet device and its housing were missing. The end of the shaft protruded beyond the end of the car. Piringer got a long heavy wrench with which he rolled the shaft from underneath the ends of the doors. The doors, heavily loaded with coal, dropped with great force causing the chains to unwind and the shaft to revolve rapidly. The wrench was jerked out of Piringer's hands. As it was whirled around by the shaft the handle struck him on the head fracturing his skull.

It is conceded that the device for working the shaft and dumping the coal was missing. Piringer had been in the employ of the foundry company for two years and had unloaded a large number of these cars, but this was the first one delivered for unloading on which the dumping device was missing. Defendant insists that Piringer was familiar with the dumping device and with the manner in which the shaft operated; that he could have unloaded the coal in this compartment in safety by shoveling it into the adjoining compartments; and that in undertaking to dump it by rolling the shaft from underneath the doors by means of a wrench he assumed the risk of the danger to which he exposed himself.

It is the general rule that a person who engages in any employment assumes the risks ordinarily incident to such employment. He is presumed to know the dangers to which he will be exposed in the usual course of events and to have taken upon himself the risk

arising from such dangers. But whether an employe assumed the risk under the facts of a particular case is usually a question for the jury. It is only when the court can say that he not only knew the danger but also understood and appreciated the risk, or in the exercise of ordinary common sense and prudence ought to have known the danger and also to have appreciated the risk, that the question becomes a question of law for the court. Wuotilla v. Duluth Lbr. Co. 37 Minn. 153, 33 N. W. 551, 5 A. S. R. 832; Hendrickson v. Ash, 99 Minn. 417, 109 N. W. 830; Peterson v. Merchants Elev. Co. 111 Minn. 105, 126 N. W. 534, 27 L.R.A. (N.S.) 816, 137 A. S. R. 537; Spino v. Butler Brothers, 113 Minn. 326, 129 N. W. 590; Kanz v. J. Neils Lbr. Co. 114 Minn. 466, 131 N. W. 643, 36 L.R.A. (N.S.) 269; Greer v. G. N. Ry. Co. 115 Minn. 213, 132 N. W. 6; Falkenberg v. Bazille & Partridge, 124 Minn. 19, 144 N. W. 431; Roach v. G. N. Ry. Co. 133 Minn. 257, 158 N. W. 232; Westcott v. C. G. W. R. Co. 157 Minn. 325, 196 N. W. 272; Reynolds v. G. N. Ry. Co. 159 Minn. 370, 199 N. W. 108; Larson v. G. N. Ry. Co. 162 Minn. 419, 203 N. W. 57; Jackson v. C. G. W. R. Co. 165 Minn. 58, 205 N. W. 689.

Piringer's injury resulted in such a disability that he was unable to testify and his version of the reasons for his action is lacking. He knew that the dumping device was missing, but this was the first time he had ever been confronted with that situation. The mechanism of the device had always been concealed from view by the housing, and it does not appear that he had ever seen such a mechanism or knew or understood the manner in which it operated. He knew that when operated by the lever it caused the shaft to roll from underneath the ends of the doors permitting them to drop. He of course knew that when they dropped it caused the chains to unwind and the shaft to revolve, but this had caused no jerk upon the lever. In the absence of the device, he undertook to release the doors by rolling the shaft with a wrench. As the result proved, this was exceedingly dangerous. But whether his knowledge in respect to the matter was such that he ought to have appreciated the risk of releasing the doors in that manner was, we think, a question

for the jury and not for the court. The situation presented had never before confronted him. Using a wrench to perform the office of the ratchet device was attended by dangers not ordinarily incident to his employment, and we are unable to say as a matter of law that he was bound to appreciate the risk in using it for that purpose.

The claim of contributory negligence is predicated upon the same facts as the claim of assumption of risk and we think was also a question for the jury.

Defendant contends that the act of Piringer in operating the dumping appliance by means of a wrench was an independent intervening cause of the accident which relieved defendant from liability therefor. Where the situation resulting from the original negligence is the inducing cause of the intervening act, such intervening act will not break the causal connection between the original negligence and the injury, nor absolve the original tortfeasor from liability if in the exercise of reasonable foresight he could have anticipated that the situation so created might lead to an act likely to result in harm to someone. Gillespie v. G. N. Ry. Co. 124 Minn. 1, 144 N. W. 466; Farrell v. G. O. Miller Co. 147 Minn. 52, 179 N. W. 566; Holmberg v. Villaume, 158 Minn. 442, 197 N. W. 849; Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640; Kommerstad v. G. N. Ry. Co. 120 Minn. 376, 139 N. W. 713; Crow v. Colson, 123 Kan. ·702, 256 P. 971, 53 A. L. R. 457; Lane v. Atlantic Works, 111 Mass. 136; Kentucky Ind. Oil Co. v. Schnitzler, 208 Ky. 507, 271 S. W. 570, 39 A. L. R. 979; Pittsfield C. Mfg. Co. v. Pittsfield Shoe Co. 72 N. H. 546, 58 A. 242; Town of Depew v. Kilgore, 117 Okl. 263, 246 P. 606; Southern Ry. Co. v. Webb, 116 Ga. 152, 42 S. E. 395, 59 L. R. A. 109; St. Joseph & G. I. R. Co. v. Hedge, 44 Neb. 448, 62 N. W. 887; Fishburn v. B. & N. W. Ry. Co. 127 Iowa, 483, 103 N. W. 487.

For more than two years defendant had delivered coal at this point in hopper-bottom cars from which it had been unloaded quickly and easily by means of the dumping apparatus. On the car in question the shaft holding the doors in place was in its usual position

at all the compartments, but the device for operating it was missing from one of them. Whether defendant ought not to have anticipated that when the employes of the foundry company found this device missing they might attempt to dump the load in the usual manner by using some other instrumentality to roll the shaft from beneath the doors was, we think, a question for the jury and should have been submitted to them.

The order denying a new trial is reversed and a new trial granted.