**Robert C. WHALEY, Appellant,**

**v.**

**Gary Swan ANDERSON, d/b/a Anderson Trucking, et al., Respondents.**

**Gary Swan ANDERSON, d/b/a Anderson Trucking, et al., defendant and third-party plaintiff, Respondents,**

**v.**

**Ronald TSCHIDA, et al., third-party defendants, Respondents.**

**No. C0–90–145.**

Court of Appeals of Minnesota.

July 17, 1990.

Review Granted Sept. 20, 1990.

Michel Steven Krug, Krug & Zupke, St. Paul, for Robert C. Whaley.

Steven J. Pfefferle, St. Paul, for Gary Swan Anderson, d/b/a Anderson Trucking, et al.

Dennis S. Ballou, Minneapolis, for Ronald Tschida, et al.

Considered and decided by
KLAPHAKE, P.J., and HUSPENI and
RANDALL, JJ.

## OPINION

KLAPHAKE, Judge.

On January 5, 1988, appellant Robert C. Whaley was injured in the course of his employment with G. Heileman Brewing Company, Inc., (Heileman) when he was

pinned to a loading dock by another company's delivery truck being moved without authorization by his co-worker, Ronald Tschida.

Whaley brought action in Ramsey County District Court against the owner of the truck, Gary Swan Anderson, (Anderson) and against New York Tea–Sysco (NYTS), with which Anderson had contracted to deliver coffee. On Anderson's and NYTS' motions, the trial court granted summary judgment, finding no genuine issue of material fact as to negligence, foreseeability, or special circumstances. Whaley appeals.

## FACTS

On the morning of Whaley's injury, Anderson commenced his normal delivery route for NYTS. Anderson fell behind in his route due to a flat tire and cold weather and arrived at the Quality Inn at approximately noon. The Quality Inn's posted policy calls for deliveries to occur prior to the noon hour due to congestion in the parking lot and only one loading dock.

Anderson drove into the parking lot and parked his truck flush against the single stall loading dock. The parking lot near the loading dock has a slight downward grade toward the dock. Anderson parked the truck without affixing the brake. Due to the extremely cold weather, Anderson left the truck running with the keys in the ignition. Anderson left the doors of the cab unlocked and commenced his delivery.

On the morning of his injury, Whaley was delivering Schmidt beer for Heileman. The regular driver servicing the Quality Inn was on vacation. Tschida was the normal helper on the route, but on the day of the accident was assigned to drive. Tschida's duty was to drive the truck and collect payment from the customer. Whaley was to physically deliver the beer.

Because Anderson's truck was backed up to the loading dock, Tschida was forced to park to the west. He waited for approximately five minutes before going inside. After about five minutes, Tschida returned. Tschida walked through the building to confer with the bartender and to retrieve an empty keg from the kitchen. While inside, Tschida did not observe Anderson anywhere. Not having seen Anderson inside, Tschida waited another minute or two for Anderson to return to his truck.

Observing that his own truck was blocking traffic and that Anderson's truck was running, Tschida decided to move Anderson's truck so he could gain access to the dock. Tschida entered Anderson's truck observing that the emergency brake was not affixed. Tschida moved the truck forward about four feet, put the truck back into neutral with the motor running and pulled the brake lever toward him, attempting to activate the brake. Either during or after Tschida was getting out of Anderson's truck, the vehicle rolled backwards, pinning Whaley to the dock and severly injuring him.

The emergency brake in Anderson's truck has an adjustment knob which may be utilized to tighten or loosen the brake in accordance with the tension needed to hold the vehicle. Anderson testified that the emergency brake was "backed off" at the time of the accident. He indicated the brake was adjusted in such a manner because he was afraid it would cause drag on the engine even though not affixed. Anderson stated that he tightens the adjustment before affixing the brake when he needs it or if the truck is left running. Whaley's brake expert, Thomas Mike, testified by affidavit that to "back off" an emergency parking brake is unsafe. He further testified that if an emergency brake is adjusted normally, it will not cause drag on the engine.

## ISSUES

1. Is there a genuine issue regarding facts material to the "special circumstances" test precluding summary judgment in favor of respondent?

2. Is there a genuine issue as to the motor vehicle owner impliedly consenting to an unauthorized party moving his vehicle, precluding summary judgment in favor of respondent?

## ANALYSIS

### I.

■ On appeal from summary judgment, an appellate court must determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn.1989). Generally, issues of negligence and proximate cause are questions of fact not appropriate for determination on summary judgment. *Sauter v. Sauter*, 244 Minn. 482, 486, 70 N.W.2d 351, 354 (1955). Under appropriate circumstances, however, "where material facts are not in dispute, and as a matter of law compel only one conclusion," summary adjudication may be appropriate. *Id.*

■ Minnesota law would generally insulate Anderson from liability for Tschida's intervening acts if Tschida were a thief. *See Wannebo v. Gates*, 227 Minn. 194, 201–02, 34 N.W.2d 695, 699 (1948) (owner of vehicle could not have foreseen thief would have been more likely than ordinary driver to negligently cause accident occurring some time after flight from the scene of theft had terminated). Negligent driving by an auto thief is an efficient intervening cause of a plaintiff's injuries, relieving a vehicle owner of liability. *Kalberg v. Anderson Bros. Motor Co.*, 251 Minn. 458, 459–60, 88 N.W.2d 197, 198–99 (1958); *Anderson v. Theisen*, 231 Minn. 369, 372, 43 N.W.2d 272, 274 (1950).

An exception to the general rule is the special circumstances test announced in *State Farm Mutual Automobile Insurance Co. v. Grain Belt Breweries, Inc.*, 245 N.W.2d 186 (Minn.1976). The *Grain Belt* court determined that although the failure to remove an ignition key might not render the motorist liable for consequences of an intermeddler's carelessness under normal circumstances, such an omission may constitute actionable negligence in the presence of "special circumstances." The court held an owner of a delivery truck was negligent where the vehicle has been parked unattended in a locality which was known, or should have been known to the driver to be one frequented by individuals who might be expected both to tamper with the vehicle and lack the capacity necessary to operate it safely. *Grain Belt*, 245 N.W.2d at 189. The court recognized:

> Special circumstances which impose a greater potentiality of foreseeable risk or more serious injury, or require a lesser burden of preventative action, may be deemed to impose an unreasonable risk on, and a legal duty to, third persons.

*Id.* at 189 (citing *Hergenrether v. East*, 61 Cal.2d 440, 393 P.2d 164, 166, 39 Cal.Rptr. 4, 6 (1964)).

The *Grain Belt* court did not imply that all cases involving the negligent driving of a thief must be submitted to a jury. Instead, a trial court must consider the facts of each case and determine whether in its judgment, such facts constituted "special circumstances"[1] from which a jury could reasonably find that the owner's negligent act directly caused the injury. *Id.* at 189–90.

The supreme court stated:

> [E]ach case must be considered on its own facts to determine whether the joint affect of them in toto justifies the conclusion that the foreseeable risk of harm imposed is unreasonable, and that the defendant owner or one in charge of the vehicle has a duty to third persons in the class of the plaintiffs to refrain from subjecting them to such risk.

*Id.* at 189 (citing *Hergenrether*, 61 Cal.2d at 444, 393 P.2d at 166, 39 Cal.Rptr. at 6.) Pursuant to *Grain Belt*, it is for this court to determine whether the trial court erred

---

1. The court found the following facts could reasonably constitute "special circumstances":
   (a) the keys were left in a large beer truck on a Minneapolis street in an area of bars and an off-sale liquor store while the driver and his helper were having lunch, (b) the truck could not be seen by the employees from the place they were lunching, (c) the driver knew the area was "proportionately" high in hard drinking, (d) the thieves were two heavily intoxicated individuals, (e) the area is one recognized as having a "rather high crime rate," and (f) the accident happened shortly after the theft while, the thieves were in flight. *Id.*, 245 N.W.2d at 189.

as a matter of law in determining that special circumstances were not present. *Id.* at 189–90.

■ We interpret the "special circumstances" test of *Grain Belt* to involve two prongs of analysis. First, from the attendant facts, it must be foreseeable that an unauthorized party would use the vehicle and the owner's negligence must have facilitated such unauthorized use. Second, it must be foreseeable that the unauthorized party will not operate the vehicle safely. *Id.* at 190 (citing *Mezyk v. National Repossessions, Inc.*, 241 Or. 333, 340, 405 P.2d 840, 843 (1965)).

■ The trial court concentrated on the specific facts of *Grain Belt* and focused on the potential of the area for the occurrence of criminal acts and consequential negligent operation of vehicles. We believe the "special circumstances" test of *Grain Belt* is not limited to traditional notions of theft but rather includes other circumstances of unauthorized use of a vehicle. The proper focus is whether an unauthorized use is reasonably foreseeable from the circumstances present.

■ Although all parties agree that it is extremely rare for one delivery truck driver to move another's vehicle, the record contains facts from which a jury could determine that a reasonable person in Anderson's position would have foreseen that his truck would be moved without his authorization. Anderson was aware of the congestion problems in the Quality Inn parking lot and left his keys in the vehicle, the vehicle running and the doors to the cab unlocked. Despite having a bar, restaurant and hotel, the Quality Inn had only a single stall loading dock. Competition between delivery drivers for the use of the single dock reasonably could be anticipated.

It is not necessary that a tortfeasor anticipate the particular injury which occurred. *Ponticas v. K.M.S. Investments*, 331 N.W.2d 907, 915 (Minn.1983). It is only necessary that a person appreciate the risk associated with the vehicle in its condition. *Liberty Mutual Insurance Co. v. Great Northern Ry. Co.*, 174 Minn. 466, 219 N.W. 755 (1928). The supreme court stated:

> Where the situation resulting from the original negligence is the inducing cause of the intervening act, such intervening act will not break the causal connection between the original negligence and the injury, nor absolve the original tortfeasor from liability if in the exercise of reasonable foresight he could have anticipated the situation so created might lead to an act likely to result in harm to someone.

*Id.*, 219 N.W. at 757; *cf. Clark v. Rental Equipment Co.*, 300 Minn. 420, 426–27, 220 N.W.2d 507, 511 (1974) (supplier of scaffold without safety rail is liable to third person for injury if supplier had reason to believe such person would not realize danger in using the device).

Here, Anderson left the truck with the brake "backed off." A jury could conclude that with reasonable foresight Anderson could have anticipated that a third party would move his truck and, not knowing the brake was "backed off", set the brake allowing the vehicle to injure someone. We conclude the trial court erred in granting summary judgment and determining as a matter of law that "special circumstances" did not exist.

## II.

Minnesota statutes impose liability on an owner of a motor vehicle who expressly or impliedly consents that a third party may operate the vehicle.[2] Whaley argues that from the circumstances present at the Quality Inn lot on the day he was injured, Anderson could be found to have impliedly consented that Tschida could move his vehicle.

■ The parties do not dispute that Anderson did not expressly consent that Tschida could move his truck. Whaley

---

**2.** Minn.Stat. § 170.54 (1988) provides:

Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof.

maintains that Anderson knew or should have known that someone would need to move his truck and that by leaving his truck unattended and running, with the doors unlocked, he impliedly consented that Tschida could move the vehicle.

Whaley, however, has cited no authority which would provide a basis for the implied authorization for one to use the vehicle of another where there is no relationship between the owner and the unauthorized user or a series of prior uses with or without express permission. *Compare Safeco Insurance v. Diaz,* 385 N.W.2d 845, 847 (Minn.App.1986) (the strongest evidence of implied permission would be a series of prior uses without express permission and yet without objection by the owner); *Beebe v. Kleidon,* 242 Minn. 521, 524–25, 65 N.W.2d 614, 617 (Minn.1954) (implied consent found where there was evidence that grandson had his own set of keys for the car and had driven the car previously); *Stewart v. Anderson,* 310 Minn. 495, 498, 246 N.W.2d 576, 578 (1976) (implied consent found where family friend had previously used vehicle with the express permission).

Whaley argues public policy requires that persons injured as a result of the negligent operation of motor vehicles be given "an approximate certainty of effective recovery by making the owner who lent his vehicle to another responsible." *Milbank Mutual Insurance Co. v. U.S. Fidelity,* 332 N.W.2d 160, 165 (1983) (citing *Hutchings v. Bourdages,* 291 Minn. 211, 189 N.W.2d 706 (1971)). This, however, is not a case in which a plaintiff has no effective recourse against the operator of the motor vehicle and must pursue claims against its owner. Here, respondents have brought a claim for indemnity and/or contribution against Tschida and Heileman. *See Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 257 N.W.2d 679, 687 (1977).

As a matter of law, there is no basis from which a jury could find that Anderson impliedly granted Tschida permission to move his truck. The trial court did not err in granting summary judgment as to the implied consent issue.

## DECISION

The "special circumstances" test may properly be extended to Tschida's unauthorized use of Anderson's vehicle. From the circumstances present at the time of Whaley's injury, it was foreseeable that another driver would move Anderson's truck to gain access to the loading dock. Tschida's unsafe use was foreseeable where Anderson's own negligence prevented Tschida from appreciating the danger in using the vehicle. Accordingly, the trial court erred in finding no special circumstances. The trial court's grant of summary judgment is reversed and the matter is remanded for trial.

Reversed and remanded.

RANDALL, Judge (dissenting).

I respectfully dissent. The record supports the trial court's decision to resolve Whaley's claim as a matter of law.

The parties agree that truck drivers do not generally move other drivers' trucks at loading docks. Whaley testified in a deposition that in his 18 years with Heileman he had never moved another driver's truck at a loading dock nor had he seen anyone else do so. This testimony directly supports the trial court's conclusion that it was unforseeable that an unauthorized party would use Anderson's vehicle. I cannot find that the trial court erred in concluding that no genuine issues of material fact had to be resolved on the first prong of the *Grain Belt* test. I would affirm the trial court's conclusion that respondents are entitled to summary judgment as a matter of law.